CHICAGO G. W. RY. CO. v. NORTHERN PAC. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. April 16, 1900.)

No. 1,250.

CONTRACTS—AGREEMENT FOR JOINT USE OF RAILWAY TRACK—CONSTRUCTION BY PARTIES.

A contract between railroad companies for the joint use of a track provided that one of the companies should keep and maintain the property to be so jointly used in good order, condition, and repair, renewing and replacing the same, and the different parts thereof, as necessary, and that the second company should pay its proportionate share of the cost thereof, on a wheelage basis, on receipt of monthly itemized statements. For 10 years such statements included the expense of maintaining and paying flagmen, station agents, operators, switch-lamp tenders, tower men, and similar employés whose services were necessary to the safe and orderly operation of the trains of the parties over the joint track, and the second company, without objection, paid its proportion of such expenses. *Held* that, in view of such construction of the contract by the parties, it must be considered as having been intended to include such expense, either by the terms used or by implication, as a part of that to be borne by the parties jointly, and that after such a length of time neither the parties nor their successors in interest could insist on a different construction.

In Error to the Circuit Court of the United States for the District of Minnesota.

On the 21st day of September, 1885, a contract was entered into between the St. Paul & Northern Pacific Railway Company, party of the first part, the Northern Pacific Railroad Company, party of the second part, and Minnesota & Northwestern Railroad Company, party of the third part, relating to the joint use and operation of a certain portion of the St. Paul & Northern Pacific Railway Company's tracks. The plaintiff in this case has succeeded to the rights of the Northern Pacific Railroad Company and the St. Paul & Northern Pacific Railroad Company under that contract. The defendant is successor to the obligations of the Minnesota & Northwestern Railroad Company. This action is brought by the Northern Pacific Railway Company against the Chicago Great Western Railway Company to recover $4,685.21 alleged to be the defendant's proportionate share, computed on a wheelage basis, according to the terms of the contract, for "salaries of flagmen, station agents, operators,

switch-lamp tenders, tower men, and similar employés necessarily and properly engaged in the operation of the lines used by the defendant, and without which the defendant could not operate over said lines, and for material, such as oil for switch lamps, materials used in stations, and the like, which material was necessary to the operation of said lines, without the use of which the defendant could not have operated over the same." The defendant denied its liability. The parties waived a jury, and the case was tried by the court, whose finding was general in favor of the plaintiff for the amount claimed. Judgment was rendered accordingly, and the defendant sued out this writ of error.

F. B. Kellogg (Daniel W. Lawler, on the brief), for plaintiff in error.

C. W. Bunn, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Contracts between railroad companies similar to the one in suit are not uncommon, and the obligations of the companies entering into them are commonly well understood. While such contracts provide for the joint use of the railroad track, it is obvious that the several companies cannot each have its own time-table, train master, tower men, operators, and the like for regulating the movement of its trains over the joint track. The regulation and movement of trains over the joint track must necessarily be committed to a single head. That is a business which admits of no divided authority. And so, too, it must be made the special duty of some one of the companies to keep the joint track and its appurtenances in good order and condition for the running of trains. While these duties in the first instance are devolved on some designated company, the cost thereof is usually chargeable to the joint account of the companies using the joint track, in proportions agreed upon.

The provisions of the contract involved in this suit on the subject of the joint expenses, and necessary to be considered in the disposition of the case, are as follows:

"Sixth. The Pacific Company shall and will keep and maintain in good order, condition, and repair, during the continuance of this agreement, the property, the right to the joint use whereof is hereby granted, renewing and replacing the same and the different parts thereof as necessary. And the Minnesota Company does hereby covenant, promise, and agree to and with the Pacific Company that, in addition to the said rentals, it, the Minnesota Company, shall and will pay to the Pacific Company, on the 10th day of each month after the rentals aforesaid shall have begun to accrue, and during the existence of this agreement, such proportion of the cost and expense of keeping in good order, condition, and repair, and of maintaining, renewing, and replacing, the property covered by this agreement, including premiums paid for insurance thereon, during the then last preceding calendar month, as the number of wheels per mile it shall have run over the said property, or any part thereof, during such month bears to the whole number of wheels per mile run over the same during the same month.

"Seventh. The Pacific Company shall keep true and accurate accounts in detail of the actual cost and expense of any and all substantial and permanent improvements it shall make, or cause or procure to be made, upon or to the property covered by this agreement, and of the actual cost and expense of the maintenance, and the keeping in good order, repair, and condition, of said property, and of any and all renewals and replacements it shall make of any part thereof, and also of the number and mileage of wheels run on or over said

property, or any part thereof, during each month. And the Pacific Company shall, on or before the 5th day of each month, furnish to the Minnesota Company, at its office in the city of St. Paul, a statement of all said costs and expenses paid during the then last preceding month, and also a statement of the entire number of wheels run over the property covered by this agreement by all parties using the same during said last preceding month, and the total mileage thereof; and the Minnesota Company shall furnish to the Pacific Company, at its office in the city of St. Paul, on or before the 10th day of each month, a statement of the number of wheels run by it over its said property, during the then preceding month, and the total mileage thereof."

By the express terms of the contract, the Northern Pacific Company covenants that it "will keep and maintain in good order, condition, and repair, during the continuance of this agreement, the property, the right to the joint use whereof is hereby granted, renewing and replacing the same, and the different parts thereof, as necessary"; and the Minnesota Company covenants that it "will pay the Pacific Company, on the 10th day of each month, * * * such proportion of the cost and expense of keeping in good order, condition, and repair, and of maintaining, renewing, and replacing, the property covered by this agreement, including premiums paid for insurance thereon, * * * as the number of wheels per mile it shall have run over said property, or any part thereof, during such month, bears to the whole number of wheels per mile run over the same during the same month."

The contention of the defendant is that the clause of the contract which imposes on it the obligation to pay this agreed proportion of the expense of maintaining the property does not impose on it the obligation to pay the like proportion of the cost and expense of maintaining and paying flagmen, station agents, operators, switch-lamp tenders, tower men, and similar employés whose services are necessary to the safe and orderly passage of trains over the joint track. If the paragraph of the contract quoted imposes on the Northern Pacific Company the obligation to pay the last-named expenses, then the same paragraph imposes on the defendant the obligation to pay its proportionate share thereof, because the same language is used in both instances. If these expenses are not covered by this paragraph of the contract, then there is no provision whatever for their payment by either company; and in that aspect of the case it might well be contended that these operating expenses necessarily incurred in the joint use of the track, and for the equal benefit of the companies using the joint track, should be shared in the same proportion as the expense of maintaining the joint track. It was obvious that these expenses would have to be incurred by the joint use of the track, and that they would have to be paid by one party or the other, or shared between them.

The most that can be claimed by the defendant is that the contract does not in express words impose on either party the obligation to pay these expenses or any part of them. Conceding this to be so, the inquiry arises, what implications in this regard may be fairly drawn from the express provisions of the contract taken as a whole? A part of the obligations arising out of every contract, no matter how detailed its provisions may be, are implied obligations, and what is implied in a contract is as much a part of it as what is expressed. And, when

we come to the consideration of the implications in this contract, we have the best possible light to guide us in its construction. We have the explicit and long-continued construction placed upon the contract by the parties themselves.

From the very inception of the contract, and continuing for a period of 10 years, the Northern Pacific Company claimed, and the defendant company paid, a share of these operating expenses on monthly bills, which set forth clearly and distinctly each item of expense here sued for. During that long period there was no suggestion from any quarter that the defendant company, or its predecessor in interest, was not obligated to pay the same proportion of these operating expenses as those incurred in maintaining, repairing, and insuring the property. Its obligation to do so was admitted every month in the year for 10 years by the payment, without protest or question, and with full knowledge of all the facts, of the monthly bills for its share of these expenses. It is a canon in the interpretation of contracts that the practice of the parties under them may furnish a solid basis on which their construction may rest. "Tell me," says Lord Chancellor Sudgen, "what you have done under a deed, and I will tell you what that deed means." Attorney General v. Drummond, 1 Dru. & Wal. 353, 366, affirmed on appeal in Drummond v. Attorney General, 2 H. L. Cas. 837. This remark of the lord chancellor has come to be accepted as a maxim in the construction of contracts. Topliff v. Topliff, 122 U. S. 121, 127, 7 Sup. Ct. 1057, 30 L. Ed. 1110; Steinbach v. Stewart, 11 Wall. 567, 576, 20 L. Ed. 56; Chicago v. Sheldon, 9 Wall. 54, 19 L. Ed. 594; Hamm v. City of San Francisco (C. C.) 17 Fed. 119, 124; Mathews v. Danahy, 26 Mo. App. 660; Jennings v. Machine Co., 138 Mass. 594; District of Columbia v. Gallaher, 124 U. S. 505, 8 Sup. Ct. 585, 31 L. Ed. 526; Knox Co. v. Ninth Nat. Bank, 147 U. S. 91, 13 Sup. Ct. 267, 37 L. Ed. 93; Leavitt v. Investment Co., 54 Fed. 439, 4 C. C. A. 425, 12 U. S. App. 193; Metropolitan Nat. Bank v. Benedict Co., 36 U. S. App. 604, 20 C. C. A. 377, 74 Fed. 182; Central Trust Co. v. Wabash, St. L. & P. Ry. Co. (C. C.) 34 Fed. 254. The last case cited was strikingly like the case at bar, and we refer to and adopt the reasoning of Judge Thayer in that case as a sound exposition of the law applicable to this case.

There is in this case no inconsistency between the terms of the contract and the practice of the parties under it. There is no provision in the contract that the Northern Pacific Company shall pay these joint operating expenses, or that they shall not be shared between the parties in the same proportion as the expenses of maintaining and repairing the property and paying the insurance thereon. Neither party to the contract was more intelligent, or had a better opportunity of understanding the obligations it imposed, or was more familiar with its subject-matter, than the other. Each party to the contract had a copy of it. They were on equal terms in every respect. The contract related to a subject-matter peculiarly within the knowledge of all the contracting parties, and they, better than any one else, knew the duties and obligations it imposed on them, respectively; and having agreed in placing the same construction on its words or its implications—and it is immaterial which—for such a long period,

and that construction harmonizing with the provisions of the contract, and certainly not being inconsistent with anything contained therein, it is now too late for one of the parties, or the court, to change it. This was the construction placed on the contract by those who made it as long as they were in authority, but in the lapse of years they seem to have passed out, and "now there arose up" new men in authority, "which knew not" the meaning of the contract as did those who made it, and hence this lawsuit. But a change of officers cannot be permitted to work a change in the meaning of a contract long ago settled and agreed upon. The judgment of the circuit court is affirmed