## NEWTON v. WOOLEY et al.

### (Circuit Court, E. D. Arkansas, W. D.   December 31, 1900.)

1. SPECIFIC PERFORMANCE — GROUNDS OF REMEDY — CONTRACT FOR SALE OF STOCK.

A court of equity may decree the specific performance of a contract for the sale of stock in a corporation, where such stock cannot be purchased in the market, and has no market value.

2. SAME—PAROL EVIDENCE TO VARY CONTRACT.

In a suit for specific performance of a written contract, parol evidence is admissible on behalf of the defendant to show that the contract does not express the actual agreement of the parties, but that an important provision was omitted through mistake.

3. SAME—NATURE OF REMEDY—EQUITIES OF PARTIES.

Specific performance of a contract cannot be demanded as a matter of absolute right, but rests in judicial discretion, to be exercised according

to settled principles of equity, but always with reference to the facts of the case; and where a contract as written is unconscionable, and its specific enforcement under existing circumstances would be inequitable, and work hardship to the defendant, its performance will not be decreed.

## In Equity. Suit for specific performance of a contract.

This is a bill for specific performance of the following contract: "This memorandum of agreement, made and entered into this day by and between J. N. Wooley, party of the first part, and Charles M. Newton, party of the second part, witnesseth: That whereas, the party of the first part is now the owner of a sawmill and a railroad or tramroad running from a switch on the Iron Mountain Railroad known as 'Wooley No. 2'; and whereas, said party of the first part contemplates turning his sawmill into a stock company with a capital stock of not less than $25,000, and also changing his said railroad or mill tramroad into a railroad corporation under the laws of Arkansas, running from said switch of Wooley No. 2 to the town of Lonoke, Arkansas, and then on, say, to some point beyond Lonoke, Arkansas; and whereas, said Newton is about to undertake to assist said Wooley in securing money to equip said railroad, now said parties hereby agree to the following: The party of the first part agrees to incorporate said milling company under the laws of Arkansas with a capital stock of not exceeding $25,000. (2) The party of the first part agrees to incorporate a railroad under the laws of Arkansas, which shall begin at a point at Wooley station No. 2, and run first to Lonoke, Arkansas, and on beyond if the parties in interest shall so determine; but said line is to be completed from Wooley No. 2 to Lonoke, Arkansas, first, and is to include the line, ties, rails, etc., now owned and used by said Wooley. (3) The said Wooley is to grade and prepare the roadbed from Wooley No. 2 to Lonoke, and have the same ready for the rails, as soon as convenient. (4) The party of the second part agrees to undertake to procure parties who will sell rolling stock for said road, to be delivered as soon as said road is ready for same, of a quality and at a fair market value satisfactory to said Wooley. (5) The said Wooley agrees that he will execute a first mortgage on said road, ties, iron, rolling stock, and franchise to secure payment of the purchase money for said rolling stock; also to include in said mortgage all his right, title, and interest in all lands adjacent to said road, which land is estimated at 4,000 acres, more or less; said purchase money to be paid in equal annual payments, with interest at —— per cent. per annum. (6) The said Wooley is to receive for his interest in said railroad the sum of $20,-000 of preferred stock (if the same can be lawfully issued) with six per cent. annual dividends guarantied; or, if said preferred stock cannot be lawfully issued, then $20,000 bonds. The remainder of stock issued shall be equally divided between said Wooley and said Newton, and the stock so issued to said Newton shall be in lieu of all compensation for all services which said Newton may have performed. Preferred stock shall not vote. (7) The said milling corporation shall guaranty the interest on the purchase money for a period of not exceeding five years. Chas. M. Newton.
"J. N. Wooley.

"This 16th day of October, 1897, at Little Rock, Ark."

The bill alleges the execution of the contract, and that on February 2, 1898, the defendant Wooley organized the railroad corporation, issuing $26,900 of capital stock, of which defendant received $23,000 and $3,900 was issued to other incorporators, complainant not receiving any of the stock; that complainant made the financial arrangements contemplated by the contract, and has at all times been able and willing to comply with all the stipulations of the contract binding upon him, but that defendant has wholly failed and refused to comply with his part thereof, or to issue to complainant any of the stock in the railroad corporation to which he is entitled. It is further charged that the stock of the corporation is not for sale upon the market; that it is not salable in the market, and its value is entirely prospective, depending upon the future development of the country through which it runs for its value, and it will soon be of great value. The prayer of the bill is that the defendant Wooley be required to assign enough of his stock to make complainant the owner of half the capital stock of the railroad corporation. The answer ad-

mits the execution of the contract, but charges that it does not contain all the terms of the agreement, which were that, in addition to complainant procuring parties who will sell rolling stock for said road on credit, he was also to procure parties who would sell the rails, bolts, and spikes on credit at the fair market value, or that complainant would furnish the funds necessary to procure the same, but which provision was omitted from the contract by mistake of the scrivener who prepared the contract, and was not noticed by either of the parties until a short time before the institution of this action; that complainant was unable to secure the iron for the road, and went out of the enterprise.

The evidence shows that the defendant Wooley was the owner of a sawmill at Wooley No. 2, in Lonoke county, Ark., and of a railroad from the sawmill extending about seven miles towards the town of Lonoke, which was used as a log road; and he desired to extend the road to Lonoke, where it would connect with a trunk line. He had the right of way and the means necessary to grade the roadbed and procure the ties, but he had not the means to purchase the rails, iron, and rolling stock necessary to complete the road. The rails and iron not being purchasable on credit, he entered into negotiations with complainant, who was a broker in the city of Little Rock, to secure them for him on credit, or else obtain a loan of the money to purchase the same, which would require about $11,000; the rolling stock, which would cost about $3,000, being easily obtainable on credit. The complainant immediately entered into extensive correspondence with dealers in these materials, attempting to get the rails and rolling stock on credit. The negotiations between complainant and Wooley had been verbal until the 16th day of October, 1897, when they called on defendant's solicitors, and had them prepare the contract. Mr. Blackwood, the attorney of the defendant, dictated it to his stenographer, who afterwards transcribed it, and then the contracting parties called for it on the same day, and the clerk handed it to them, Mr. Blackwood, the attorney, being absent, and not having read it. It was signed by the parties, who supposed it stated the agreement entered into between them correctly. Complainant continued to make efforts to secure the iron and rolling stock on credit, but failed to find any person willing to sell the rails and iron on credit, or furnish the money necessary to purchase them, but succeeded in obtaining an offer to sell the rolling stock on credit. In all of his correspondence, before as well as after the execution of the written contract, complainant negotiated for the rails as well as the rolling stock. Complainant positively insists that the written contract expresses the exact terms of their agreement, while defendant Wooley is equally positive that it does not, and that it should have included an obligation on the part of complainant to procure the rails as well as rolling stock. From a careful review of the evidence and the actions of the parties immediately before and after the execution of the contract, the court finds that issue in favor of the defendant, and that the verbal agreement of the parties included the rails and iron, and was omitted from the written contract by mistake. The corporation to construct and operate the railroad was formed by the defendant and certain other parties under the laws of the state of Arkansas, and complainant was to be one of the incorporators, and each was to be the owner of one-half of the common stock. Merchants at Lonoke, who were anxious to see the road built, also became subscribers for some of the stock, expecting to pay their subscriptions; and also that complainant would pay his subscription in cash at the face value of the stock. Complainant failing to secure the iron, the Lonoke stockholders asked him about paying for the stock, and upon his refusal to talk about the matter to them they declined to remain in the proposed corporation, which had not yet been incorporated, unless complainant would either pay his subscription in money or withdraw; whereupon complainant withdrew from the corporation, and thereupon it was incorporated under the laws of the state, he not appearing as one of the incorporators or stockholders in the articles of incorporation as filed in the office of the secretary of state. The other incorporators paid their subscriptions in money, defendant Wooley, receiving for his road $23,000 in stock, and also advancing of his own money $9,012.62, the other subscribers advancing $5,780.12 in money and materials in addition to the amounts paid by them for their stock; and with this money the rails and iron

were bought and the road built. No preferred stock or bonds were ever issued by the corporation or Wooley for his road, but only the common stock. Mortgages were executed by the railroad company for the money loaned and materials furnished by the parties, which are the only liens now on the road.

Rose, Hemingway & Rose, for complainant.

Blackwood & Williams and J. W. House, for defendants.

TRIEBER, District Judge (after stating the facts). It is insisted that a court of equity has no jurisdiction to decree the specific performance of a contract for the sale or delivery of corporate stocks, but that the remedy is exclusively at law in an action for damages sustained by reason of the breach of the contract. While it is true that, as a rule, the remedy for failure to deliver stock is at law for damages, there are exceptions to this rule. One of the exceptions is where the value of the stock is not easily ascertainable, or the stock is not obtainable on the market at all. In such case a court of equity may decree specific performance. 1 Cook, Stock, Stockh. & Corp. Law, 338, where the authorities are collected. In the case at bar it is alleged and proven that the stock is not in the market, and that in fact it is nearly all owned by defendant, so that complainant cannot obtain it in any other way than from the defendant. For these reasons this plea cannot be sustained.

The important question to be determined is, "Shall a court of equity decree a specific performance upon the facts of this case?" Specific performance is not of absolute right, but rests entirely in judicial discretion, to be exercised according to settled principles of equity, but always in reference to the facts of the case. Mr. Pomeroy, in his work on Equity Jurisprudence, says (section 400):

"A contract may be perfectly valid and binding at law; it may be of a class which brings it within the equitable jurisdiction, because the legal remedy is inadequate; but if the plaintiff's conduct in obtaining it, or in acting under it, has been unconscientious, inequitable, or characterized by bad faith, a court of equity will refuse him the remedy of a specific performance, and will leave him to his legal remedy by action for damages. It is sometimes said that the remedy of specific performance rests with the discretion of the court, but, rightly viewed, this discretion consists mainly in applying to the plaintiff the principle, 'He who comes into a court of equity must come with clean hands,' although the remedy, under certain circumstances, is regulated by the principle, 'He who seeks equity must do equity.' The doctrine, thus applied, means that the party asking the aid of the court must stand in conscientious relations towards his adversary; that the transaction from which his claim arises must be fair and just, and that the relief itself must not be harsh and oppressive upon the defendant. By virtue of this principle, a specific performance will always be refused when the plaintiff has obtained the agreement by sharp and unscrupulous practices, by overreaching, by concealment of important facts, even though not actually fraudulent, by trickery, by taking undue advantage of his position, or by any other means which are unconscientious; and when the contract itself is unfair, one-sided, unconscionable, or affected by any other such inequitable feature, and when the specific enforcement would be oppressive upon the defendant, or would prevent the enjoyment of his own rights, or would in any other manner work injustice. This application of the principle, better, perhaps, than any other, illustrates its full meaning and effect, for it is assumed that the contract is not illegal, that no defense could be set up against it at law, and even that it possesses no features or incidents which could authorize a court of equity to set it aside and cancel it. Specific performance is refused simply because the plaintiff does not come into the court with clean hands."

In Story's Equity Jurisprudence the law is stated as follows:

"In truth, the exercise of this whole branch of equity jurisprudence respecting the rescission and specific performance of contracts is not a matter of right in either party, but it is a matter of discretion in the court; not, indeed, of arbitrary or capricious discretion, dependent upon the mere pleasure of the judge, but of that sound and reasonable discretion which governs itself, as far as it may, by general rules and principles, but at the same time which withholds or grants relief, according to the circumstances of each particular case, when these rules and principles will not furnish any exact measure of justice between the parties. On this account it is not possible to lay down any rules and principles which are of absolute obligation and authority in all cases, and therefore it would be a waste of time to attempt to limit the principles or the exceptions which the complicated transactions of the parties and the ever changing habits of society may at different times and under different circumstances require the court to recognize or consider. The most that can be done is to bring under review some of the leading principles and exceptions which the past times have furnished, as guides to direct and aid our future inquiries." Section 742.

In Willard v. Tayloe, 8 Wall. 557, 19 L. Ed. 501, Mr. Justice Field, speaking for the court, after carefully reviewing the authorities, says:

"The discretion which may be exercised in this class of cases is not an arbitrary or capricious one, depending upon the mere pleasure of the court, but one which is controlled by the established doctrines and settled principles of equity. No positive rule can be laid down by which the action of the court can be determined in all cases. In general, it may be said that the specific relief will be granted when it is apparent from a view of all the circumstances of the particular case that it will subserve the ends of justice; and that it will be withheld when, from a like view, it appears that it will produce hardship or injustice to either of the parties. It is not sufficient, as shown by the cases cited, to call forth the equitable interposition of the court, that the legal obligation under the contract to do the specific thing desired may be perfect. It must also appear that the specific enforcement will work no hardship or injustice; for, if that result would follow, the court will leave the parties to their remedies at law, unless the granting of the specific relief can be accomplished with conditions which will obviate that result." 8 Wall. 567, 19 L. Ed. 504.

See, also, Marble Co. v. Ripley, 10 Wall. 339–363, 19 L. Ed. 955; Nickerson v. Nickerson, 127 U. S. 668–675, 8 Sup. Ct. 1355, 32 L. Ed. 314; Hennessey v. Woolworth, 128 U. S. 438–442, 9 Sup. Ct. 109, 32 L. Ed. 509; Randolph's Ex'r v. Quidnick Co., 135 U. S. 457, 10 Sup. Ct. 655, 34 L. Ed. 200; Manufacturing Co. v. Gormully, 144 U. S. 224, 12 Sup. Ct. 632, 36 L. Ed. 414.

In the last-cited case, Mr. Justice Brown, in delivering the opinion of the court, says:

"Whether this contract be absolutely void as contravening public policy or not, we are clearly of the opinion that it does not belong to that class of contracts the specific performance of which a court of equity can be called upon to enforce. To stay the arm of a court of equity from enforcing a contract it is by no means necessary to prove that it is invalid. From time immemorial it has been the recognized duty of such courts to exercise a discretion; to refuse their aid in the enforcement of unconscionable, oppressive, or iniquitous contracts; and to turn the party claiming the benefit of such contracts over to a court of law. This distinction was recognized by this court in Cathcart v. Robinson, 5 Pet. 264, 276, 8 L. Ed. 124, wherein Chief Justice Marshall says: 'The difference between that degree of unfairness which will induce a court of equity to interfere actively by setting aside a contract and that which will induce a court to withhold its aid is well settled. 10 Ves. 292; 2 Cox, Ch. 77. It is said that the plaintiff must come into court

with clean hands, and that a defendant may resist a bill for specific performance by showing that under the circumstances the plaintiff is not entitled to the relief he asks. Omission or mistake in the agreement, or that it is unconscionable or unreasonable, or that there has been a concealment, misrepresentation, or any unfairness, are enumerated among the causes which will induce the court to refuse its aid.'" 144 U. S. 236, 12 Sup. Ct. 637, 36 L. Ed. 419.

In the case at bar it was clearly the intention of the parties to require complainant to find a party willing to sell on a credit not only the rolling stock, which the evidence shows would not exceed in value $3,000, but the rails, spikes, and other iron necessary to build the road; and that the omission of this part of the agreement was an oversight on the part of the party who prepared or dictated the contract. It is unreasonable to suppose that any business man such as the defendant is shown to be by complainant would enter into such a contract unless he was of the opinion that it included the iron. The efforts made by complainant immediately before and after the execution of the contract to secure the iron show that he considered that a part of his obligation. As was said by Judge Caldwell in delivering the opinion of the United States circuit court of appeals for this circuit in Chicago G. W. Ry. Co. v. Northern Pac. Ry. Co., 42 C. C. A. 25, 101 Fed. 792, "It is a canon in the interpretation of contracts that the practice of the parties under them may furnish a solid basis on which their construction may rest." 42 C. C. A. 28, 101 Fed. 795. While in an action on a contract parol evidence might be inadmissible, in the absence of fraud, to show the intention of the parties to have been different from what is expressed in the contract, the authorities above cited are conclusive that in an action for specific performance such proof may be considered by the court. The contract itself, if prepared as intended, is unfair, one-sided, and unconscionable, and for this reason a court of equity should hesitate to compel a specific performance. To grant the relief prayed for in the bill would certainly work an unreasonable hardship on the defendant. The property has been conveyed by defendant to a corporation. He has received no preferred stock nor bonds for the $20,000, which, under his contract, was to be superior to the common stock, but received only common stock at par for the real value of the property. Other parties have subscribed for some of the stock, and paid money for it, and that money was used to pay for some of the iron. If defendant is required to perform the contract, he must not only transfer to the complainant one-half of his own stock free from the $20,000 preferential stock or bonds which he was to receive, but he must also give him half of the stock subscribed and paid for by the other stockholders. Complainant would thus receive $13,450 of defendant's stock, free from the $20,000 preferential lien, and free from the lien which would have been given to the parties who furnished the material which was bought with the $3,900, money paid in by the other stockholders; while defendant would only receive for his property, which seems to have been valued by the parties at $20,000, $9,550 in common stock,—a little over two-thirds of what complainant would receive for procuring a party who was willing to sell $3,000 worth of rolling stock on good security to be given by the corpora-

tion, which was to pay for the same when it matured. The court has no power in this action to compel the corporation to execute to the defendant Wooley preferred stock or bonds for the $20,000 specified in the contract, as the other stockholders of the corporation have vested interests in it which cannot be disturbed. These stockholders, the evidence shows, objected to any stock being issued to complainant unless he would pay therefor in money, as they expected and intended to do. ˙Complainant, whose name appeared as a subscriber and one of the original incorporators, when advised of this, withdrew his subscription; and in consideration of his withdrawal the other stockholders remained in the corporation, and˙paid their stock subscriptions in money. While it is true that, as a rule, where the hardship has been brought upon a party by his own actions, such hardship is not a good defense to an action for specific performance if it is instituted by an innocent party, even this rule is subject to qualifications. The thing contracted to be done must be "reasonably possible" (Fry, Spec. Perf. § 258; Pom. Cont. § 187), and "not oppressive on the defendant" (Adams, Eq. pp. 183, 253; Shields v. Trammell, 19 Ark. 51). In the opinion of the court, owing to the conditions existing now, it is not "reasonably possible" to carry out this contract and enforce it specifically without being very oppressive on the defendant. A decree as asked by complainant would work a great hardship, and be very oppressive on the defendant, and for this reason complainant must be remitted to an action at law to recover the damages sustained by him by reason of defendant's breach of contract. As defendant Wooley was guilty of gross negligence when he signed the contract, and somewhat at fault, he should be taxed with all the costs of this proceeding. Let there be a decree dismissing the bill and taxing defendant Wooley with all the costs of this action.