## VOCALION ORGAN CO. v. WRIGHT.

(Circuit Court, D. Massachusetts. May 2, 1905.)

No. 1,845.

**1. CONTRACTS—RULES OF CONSTRUCTION.**

In construing a written contract the court should put itself in the situation of the parties at the time it was made, so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and the correct application of the language of the contract, taken as a whole, to the things described.

**2. SAME—CONSTRUCTION—CONTRACT FOR INTEREST IN FUTURE INVENTIONS.**

Complainant was a corporation engaged in the manufacture of musical instruments, including organs, and defendant was the superintendent of its factory, and had made certain inventions in relation to organs. A new contract was made between them by which, in consideration of an increased salary for a term of five years, it was provided in clause 2, which was the principal one, that a one-half interest in all improvements or inventions made by defendant during the term ."in or relative to organs, both keyed and automatic," should be assigned to complainant, and they should be at once patented at complainant's cost. By clause 4 it was provided that complainant should have the exclusive right to purchase and use improvements and inventions made by defendant during the term "in self-playing pianos or self-playing devices for playing pianos," on such terms as should be mutually agreed upon. Defendant made and patented certain inventions which were applicable equally to organs and to self-playing pianos. *Held*, that such inventions came within the provisions of the second clause of the contract, being of the class which it was the principal purpose of the contract to cover, and that complainant was entitled to an assignment of a half interest therein without further payment than that provided for by the contract.

In Equity.

George D. Beattys and George B. B. Lamb, for complainant.
Henry Wood Fowler and Charles M. Thayer, for defendant.

HALE, District Judge. This suit in equity is brought to compel the defendant to assign to the complainant a one-half interest in certain improvements, inventions, and patents in or relative to organs, in accordance with the terms of a written contract made by the parties on May 15, 1901. The suit is brought also to restrain the defendant, his heirs, executors, administrators, or assigns, from selling or assigning any interest in said inventions, improvements, and patents, to any person other than the complainant, during the life of the contract. The complainant corporation is a citizen of the state of New Jersey; the defendant is a citizen of the state of Massachusetts.

At the time of entering into the contract the complainant was engaged in the business of manufacturing and selling musical instruments, including organs, both keyed and automatic. The defendant was the superintendent of the complainant corporation, at a salary of $3,600 per year.

Although only the second and fourth paragraphs of the contract are brought before the court for construction, it is material, for

certain purposes of the inquiry, to examine the whole contract. That contract is as follows:

"Agreement made this fifteenth day of May, in the year nineteen hundred and one, between the Vocalion Organ Company, a corporation organized and existing under the laws of the state of New Jersey, transacting business at Worcester, in the county of Worcester, commonwealth of Massachusetts, and in the city of New York, state of New York, party of the first part, and Morris S. Wright of Worcester, aforesaid, party of the second part, witnesseth:

"That for and in consideration of the mutual covenants and other consideration hereinafter expressed the parties hereto covenant and agree as follows:

"First. The party of the first part covenants and agrees to employ the party of the second part and does hereby employ the party of the second part and the party of the second part covenants and agrees to accept and hereby does accept exclusive employment of the party of the first part as superintendent of factories of the party of the first part.

"Second. The party of the second part covenants and agrees that an undivided one half part of the whole right, title and interest in and to all inventions or improvements made by him during the term of this agreement, in or relative to organs both keyed and automatic shall be the property of the party of the first part, and immediately upon making any such inventions or improvements the party of the second part covenants to apply for letters patent of the United States therefor and for such foreign patents therefor as the party of the first part may desire, and to make, execute and deliver all such applications, specifications, drawings and other documents as may be necessary to obtain such letters patent; and the party of the second part further covenants to execute, acknowledge and deliver to the party of the first part a proper assignment for record of an undivided one half interest in each such invention and in the letters patent when issued: all, however, at the proper cost and expense of the party of the first part or its successors and assigns. The party of the second part further covenants not to sell or assign his undivided one half part in and to any of the above mentioned inventions, improvements and letters patent, which part shall be and remain the exclusive property of the party of the second part his heirs, executors and administrators, until the expiration of the term of this agreement.

"Third. The party of the second part further covenants and agrees that he will without further consideration than is herein expressed assign and transfer to the party of the first part letters patent of the United States number 509,506 for improvemens in reed and pipe organs and will upon request of the party of the first part execute and deliver to the party of the first part a proper assignment of said patent for record.

"Fourth. The party of the second part further covenants and agrees to grant and does hereby grant unto the party of the first part the exclusive right to purchase and use inventions or improvements made by him during the term of this agreement, in self-playing pianos or self-playing devices for playing pianos, upon such terms as to price or royalty and other conditions as may be mutually agreed upon; and the party of the second part further covenants that he will not sell, assign, transfer or in any way dispose of any such invention or improvement to any other corporation or persons than the party of the first part during the term of this agreement.

"Fifth. As and for the salary of the party of the second part and also in full consideration for the transfer of patent number 509,506 aforesaid, and for the transfer of the undivided one half part of the right, title and interest in and to the improvements and inventions and assignments thereof, mentioned in paragraph second of this agreement, the party of the first part covenants and agrees to pay to the party of the second part, and the party of the second part covenants and agrees to accept the sum of five thousand dollars per annum, together with a percentage of one per cent. upon the net value of the increased factory output in each year over the factory output of the preceding year of the term of this agreement, which said percentage shall be ascertained and paid at the end of each year for which it shall become due.

"Sixth. It is covenanted and agreed that this agreement supersedes and makes void the agreement bearing date the fourteenth day of December, eighteen hundred and ninety-eight, between the party of the second part hereto and the late the Mason & Risch Vocalion Company, Limited, and also cancels all other existing agreements between the parties hereto.

"Seventh. It is further covenanted and agreed that this agreement shall be deemed to be in full force and effect from and after the first day of July, nineteen hundred, and until the first day of July, nineteen hundred and five, and shall terminate on said first day of July, nineteen hundred and five.

"In witness whereof," etc.

The testimony tends to show that, previous to making the contract, Mr. Tremaine, the president of the complainant company, had many conversations with the defendant in regard to his experience and ability in manufacturing, improving, and inventing musical instruments; that the defendant gave the assurance that he could develop and improve the different instruments manufactured by the complainant company; that, in view of these representations made by the defendant, the complainant company was induced to make the agreement now in suit, providing for the increase of the defendant's salary from $3,600 per year to $5,000 per year, with an added percentage based on the value of the output; and that the arrangement under this contract was to continue from July 1, 1900, to July 1, 1905.

The second paragraph of the contract provides that an undivided one-half part of the whole right, title, and interest in and to all inventions or improvements made by the defendant during the life of the contract "in or relative to organs, both keyed and automatic," shall be the property of the complainant; that the defendant shall apply for letters patent upon such inventions immediately upon making them, and shall make, execute, and deliver the applications and all necessary papers, and assign and deliver an undivided one-half part of the inventions and letters patent to the complainant.

. The fourth paragraph of the agreement provides that the defendant shall grant to the complainant the exclusive right to purchase and use inventions and improvements made by the defendant "in self-playing pianos or self-playing devices for playing pianos" upon such terms as shall be mutually agreed upon.

The testimony tends to show that the defendant made improvements and inventions during the term of the agreement, and applied for and obtained letters patent. The complainant requested the defendant to assign to it an undivided one-half interest in these improvements and letters patent, alleging that they were improvements or inventions "in or relative to organs, both keyed and automatic," but the defendant refused to do this.

There is considerable testimony as to the demands made by the complainant on the defendant for information touching the character of his inventions and improvements, and as to the replies made by the defendant, alleging that his inventions would control the manufacture of musical instruments throughout the world, that his organs known as orchestrelles were so far superior to those instruments at present in use as to take away the entire trade of the

orchestrelle, and that his inventions would control the production of metal piano players, and that they would apply equally well to self-playing pianos and pipe organs. The testimony tends to show that the defendant insisted that the complainant should pay him a satisfactory price for his inventions before he would show the papers.

It becomes material to inquire, at the threshold of the proceeding, what was the scope and meaning of the contract; for, under well-settled rules of law, in the construction of a contract courts are never to be shut out from the same light which the parties enjoyed when the contract was executed. They are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and of the correct application of the language to the things described. Nash v. Towne, 72 U. S. 689, 699, 18 L. Ed. 527. See, also, Steamship Co. v. Swift, 86 Me. 248, 29 Atl. 1063, 41 Am. St. Rep. 545. It is also necessary to examine not only the circumstances under which the contract was entered into, but to examine also the whole contract, and not merely isolated portions. O'Brien v. Miller, 168 U. S. 293, 18 Sup. Ct. 140, 42 L. Ed. 469; Potter v. Berthelet (C. C.) 20 Fed. 240.

Applying these familiar rules of construction, we find that the defendant was the superintendent of the complainant company; that he was possessed of mechanical and inventive skill, and of technical knowledge of musical instruments; that, with his experience and ability in this direction, he was capable of improving and inventing musical instruments; that the complainant was anxious to acquire a half interest in the inventions which the defendant should make; that it was willing to allow the defendant to spend the time of the corporation in the making of inventions, and, in pursuance of having the advantage of defendant's inventive thought, to give him a substantial increase of salary and a percentage based on the value of the output; that it was anxious to obtain, not only the one-half interest in the distinct subject of the business, namely, all improvements in or relative to organs, both keyed and automatic, but it was also anxious to have the option on any inventions or improvements which the defendant should make in another field of musical instruments, namely, self-playing pianos or self-playing devices for playing pianos. Accordingly, the second paragraph of the contract provided for the transfer by the defendant to the complainant of the undivided half part of all his inventions or improvements in or relative to organs, both keyed and automatic; and the fourth paragraph provided that the complainant should have the exclusive right to purchase and use inventions or improvements, during the life of the agreement, in self-playing pianos or self-playing devices for playing pianos, upon such terms as should be mutually agreed upon.

The evidence tends to show that the defendant made certain inventions in the musical art, for which application for letters patent was made and allowed. The testimony also tends to show

that all these alleged improvements and inventions were applicable equally as well to organs as to piano players. The complainant contends that all these improvements and inventions come under the terms of the second paragraph of the agreement, because they are improvements and inventions "in or relative to organs, both keyed and automatic"; and the complainant insists that these inventions and patents should be transferred to it, notwithstanding the fact that they also relate to self-playing devices for playing pianos. The defendant insists that, so far as these inventions relate to both organs, keyed and automatic, and also to self-playing pianos or self-playing devices for playing pianos, they should be excluded from the consideration of the contract; that the second paragraph should be held to embrace inventions which relate exclusively to organs, both keyed and automatic; and that the fourth paragraph should be held to embrace exclusively inventions in self-playing pianos or self-playing devices for playing pianos.

The court is of the opinion that this latter interpretation is too narrow in its construction of the contract and in its interpretation of the intention of the parties. The intention of the parties was clearly to cover all inventions and patents relating to organs, both keyed and automatic, and to embrace this subject in paragraph 2, the leading paragraph of the contract. It appears to be their intention that if inventions are shown to relate to the subject of organs, they should be considered under this paragraph, even though they also relate to self-playing pianos. The leading purpose of the contract was that the complainant corporation should have a half interest in all the inventions which related to organs, both keyed and automatic. It was upon the transfer of this half interest and in the transfer of the patent named in paragraph 3 of the contract that the consideration specified in paragraph 5 is based. Having obtained the assignment of the half part of all inventions covered by paragraph 2, the parties evidently intended that the complainant should obtain an option on all inventions relating to self-playing pianos. The court is of the opinion that paragraph 4 should be construed together with paragraph 2, so as to meet the evident purposes of the contract. Under this construction, all inventions relating to organs, both keyed and automatic, must be held to be within the contemplation of the second paragraph, even though those inventions relate also to self-playing pianos or self-playing devices for playing pianos. The purpose of paragraph 4 seems to be to give to the complainant an option to purchase inventions or improvements in self-playing pianos or self-playing devices for playing pianos, upon such terms as may be mutually agreed upon by the parties. It seems to the court that this is the only construction which takes into consideration the whole contract and its evident purposes. We have come to this conclusion after examining the whole instrument, and not any isolated provisions. We have done this under the rule laid down by the Supreme Court in Canal Co. v. Hill, 82 U. S. 94, 21 L. Ed. 64; O'Brien v. Miller, 168 U. S. 288, 297, 18 Sup. Ct. 140, 42 L. Ed. 469.

In placing a construction upon a contract, it often becomes ma-

terial for the court to consider what construction the parties themselves seem to have placed upon the instrument.

"Tell me," says Lord Chancellor Sugden, "what you have done under a deed, and I will tell you what that deed means." Attorney General v. Drummond, 1 Drury & Warren, 368. This quotation is used in Chicago & Great Western Railway Co. v. Northern Pacific Railway Co., 101 Fed. 795, 42 C. C. A. 25. When we examine the acts of the parties in reference to making assignments, we find that the defendant has assigned patents which, under the terms of paragraph 2, relate to organs and also relate to pianos. He appears by the answer and the testimony to have done this after the execution of the contract and pursuant to the terms of paragraph 2.

The patents put in evidence in the case do not seem to us to embody inventions simply and only upon piano players according to their terms and their titles; they appear to relate as distinctly to organs as to pianos or piano players or devices for playing pianos. The interpretation sought by the defendant would eliminate all or nearly all the alleged inventions made by the defendant, and leave no improvements or patents upon which the contract is to operate. It seems to us this is an unreasonable interpretation of the contract, and an interpretation not warranted by the evidence in the case. We believe the interpretation which we have given is consonant with the terms of the whole contract, the evident intention of the parties, and with their action in the premises.

Under this interpretation an undivided half part of all inventions or improvements made by defendant during the term of the agreement, namely, from July 1, 1900, to July 1, 1905, in or relative to organs, both keyed and automatic, must be transferred to the complainant, even though those improvements and inventions may also relate to other musical instruments. The defendant should also assign to complainant an undivided half part of all such inventions or improvements for which applications for letters patent have been made as set forth in paragraph 4 of defendant's answer, except those on which letters patent have been already issued. The defendant should also assign to complainant all inventions for which any other applications for letters patent have been made both in the United States and foreign countries during such term. He should also assign to complainant a half interest in the letters patent named in the stipulation of the parties in the case, and all other letters patent embodying such inventions or improvements. The defendant should also apply for letters patent, both foreign and domestic, and should execute assignments of his applications to the complainant.

An injunction may issue as prayed for by the complainant.

Let a decree be drawn consistent with this opinion, with costs to the complainant.