OTIS et al. v. PITTSBURGH-WESTMORELAND COAL CO.†

(Circuit Court of Appeals, Third Circuit. September 21, 1912.)

No. 1,608.

1. CONTRACTS (§ 170*)—CONSTRUCTION—PRACTICAL CONSTRUCTION.

When, in the performance of a written contract, both parties give it a practical construction before any controversy arises, such construction, rather than its literal meaning, will prevail.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 753; Dec. Dig. § 170.*]

2. CONTRACTS (§ 175*)—CONSTRUCTION—PRACTICAL CONSTRUCTION—EVIDENCE.

Plaintiffs contracted to take and pay for $25,000 of defendant's bonds on August 1, 1908, and a like amount on the 1st of each month thereafter at $760 per bond and interest until the entire amount had been

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied.

taken, and were given the privilege of anticipating such monthly deliveries and payments for any and all of the $250,000 of the issue, receiving time credit for as many monthly payments as were anticipated. Plaintiffs were then given the exclusive option to purchase additional bonds aggregating about $1,250,000 on specified conditions as to price and commissions, the option to be forfeited if plaintiffs failed to take up or failed to pay for not less than $25,000 in any one month. The contract further provided that the option deliveries of bonds thereunder were to succeed immediately the deliveries of the bonds purchased under the first paragraph, and that the conditions of anticipating deliveries under the option were to be the same as provided concerning the bonds purchased. Plaintiffs, without anticipating deliveries of the bonds sold outright, took and paid for them as provided, and on April 8, 1909, prior to the expiration of the time limited for the purchase of the bonds outright, bought an additional $100,000 of bonds which they claimed anticipated monthly deliveries from June 1, 1909, to October 1, 1909, following. On August 24, 1909, plaintiffs requested further deliveries and were refused. *Held*, that the stipulation that deliveries of the option bonds should succeed immediately the deliveries of the bonds purchased under paragraph 1 was not to be given such literal interpretation as to prevent proof of practical construction of the contract before controversy arose; and hence evidence relating to the conduct of the parties which tended to show that it was intended that the right to anticipate deliveries attached to both classes of bonds, and that, if anticipations were made, whether of one class or the other, the requirement to take $25,000 per month was suspended until such time as would have elapsed after the bonds had been taken in regular monthly installments, instead of in advance thereof, was admissible.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 766; Dec. Dig. § 175.*]

In Error to the District Court of the United States for the Western District of Pennsylvania.

Action by Charles A. Otis and others against the Pittsburgh-Westmoreland Coal Company to recover damages for alleged breach of a contract for the sale of bonds. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Arthur O. Fording, of Pittsburgh, Pa. (Horace F. Baker, of Pittsburgh, Pa., and Squire, Sanders & Dempsey, of Cleveland, Ohio, on the brief), for plaintiffs in error.

George C. Bradshaw, of Pittsburgh, Pa. (Edward E. Robbins, of Greensburg, Pa., on the brief), for defendant in error.

Before GRAY, Circuit Judge, and RELLSTAB, District Judge.

RELLSTAB, District Judge. The plaintiffs in error brought suit to recover damages for the alleged breach of a written executory contract relating to the sale of defendant's bonds. The question presented by the writ of error is whether certain testimony offered by the plaintiffs was relevant and material to the issue made by the pleadings, and the answer primarily involves the interpretation of such contract. The contract bears date July 7, 1908, and. after providing for the sale of $25,000 par value of bonds outright at a certain price, gives plaintiffs an option to purchase an additional number of like bonds at an increased price upon certain conditions. The alleged breach relates only to the sale of the op-

tioned bonds, but a reference to some of the terms of the contract dealing with both classes of sales is necessary for a correct understanding of the controversy.

By paragraph 1 plaintiffs agreed to take and pay for $25,000 of bonds on the 1st day of August, 1908, and a like amount on the 1st day of each month thereafter at $760 per bond plus interest to date of delivery, until the entire amount had been taken, and were given the privilege of anticipating such deliveries in the following terms:

"Provided, however, that firm (plaintiffs) has the privilege of anticipating said monthly payments for any or all of said $250,000.00, and in case firm anticipates payments, it is to receive credit for the length of time for as many monthly payments as it has anticipated."

By paragraph 2 plaintiffs were given the exclusive option to purchase additional bonds aggregating about $1,250,000 upon the following conditions:

"Firm to secure the highest obtainable price for said bonds and to that end give their best skill and ability in making sale thereof; and for all of said bonds sold under this option by firm, coal company is to be credited with $850.00 per bond, plus accrued interest to date of delivery; and after deducting $30.00 commission per bond for firm, for selling the difference between the price for which the bonds are sold and said $850.00 per bond is to be divided equally between coal company and firm, but provided, however, that all of bonds sold by firm, over and above $900.00 per bond and interest, the commission therefor to be paid to the firm shall be $20.00 per bond. Said option to firm, however, is to be forfeited and terminated when firm fails to take up and pay for not less than $25,000 bonds in any one month, and upon the failure of firm to exercise its privilege and to take up and pay for $25,-000.00 bonds for any one month, the option hereby given to firm is to be terminated and become null and void, and each party is to be relieved from any claim or damage against the other. The option herein granted and the deliveries of bonds in this paragraph recited are to succeed immediately the deliveries of the bonds purchased, mentioned in paragraph 1 hereof. The conditions of anticipating deliveries under the option are to be the same as those recited in paragraph 1 before mentioned."

The recital here referred to is the anticipation clause hereinbefore quoted.

And by paragraph 6 "firm agrees that in the sale of said $250,000 bonds, which it purchases outright as herein provided, it will endeavor to secure the highest obtainable price therefor, in the same manner as for bonds which firm undertakes to sell under the option herein included, and that in fixing the price at which the same are to be offered it will consult with said coal company."

The plaintiffs, without anticipating deliveries of the bonds sold outright, took and paid for such bonds in the installments provided for by the contract. On April 8, 1909, prior to the expiration of the time limited for the purchase of the bonds sold outright, and before the last block of such bonds was taken, plaintiffs bought an additional $100,000 of bonds from defendant, and which in their statement of claim they declare were purchased in the exercise of such option, and that thereby they anticipated the monthly deliveries and payments due under the terms of such option "from June 1, 1909, to October 1, 1909, inclusive, until which latter date the

plaintiffs were not called upon to take up and pay for any further bonds under the said option, because of the said anticipation." In such statement of claim, they further declare that before said last-mentioned date, to wit, on or about August 24, 1909, plaintiffs "requested of the defendant that it deliver to them $25,000 par value of the said remaining bonds covered by the said option, and they offered to take up and pay for the same in the manner and at the price provided for in the said option, but the defendant refused to deliver the said $25,000, par value of bonds, and notified plaintiffs that it would not carry out the terms of the said contract. The plaintiffs made repeated subsequent demands for bonds covered by the said option, to wit, on or about September 28, 1909, October 28, 1909, November 26, 1909, January 31, 1910, February 28, 1910, March 29, 1910, and other dates, with a view of taking them up and paying for them as provided therein, but the defendant neglected and refused, and still neglects and refuses, to furnish the said bonds or any of them as it was obligated to do."

The defendant in its affidavit of defense, in substance, inter alia, admits the performance by plaintiffs of their undertaking concerning the $250,000 of bonds purchased outright, the giving of such option for additional bonds, and that it sold to plaintiffs $100,000 of additional bonds. It denies, however, that such additional bonds were sold under such written contract, and "that the plaintiffs thereby anticipated the monthly sale, delivery, and payment due under their said written contract." It avers that plaintiffs did not avail themselves of the terms of such option, and, "having failed to take $25,000 in par value of said bonds on the first days of June, July and August, 1909, respectively, that said contract was thereby broken by the plaintiffs and rendered null and void under its provisions"; that it, "the defendant, did on July 15, 1909, by written notice to the plaintiffs, cancel said contract and declared the same to be null and void, according to its terms and provisions"; and that such additional bonds were sold under an oral contract distinct from such written contract and founded upon a different consideration, whereby it was orally agreed "that such transactions should not be counted as bonds taken under the terms of said contract." It further avers that such demands for bonds made on August 24, 1909, and the other dates mentioned by plaintiffs "were not made in good faith, but only for the purpose of attempting to revive the option contained in said contract, which had been forfeited by the plaintiffs."

On the issues thus presented by the pleadings, the question whether such $100,000 of bonds were anticipations under the written option or purchases under a different oral agreement was relevant and material, unless such written agreement did not permit the exercise of such option before June 1, 1909. The excluded testimony was offered by plaintiffs to support their claim that such purchase was an anticipation of such option and within the terms thereof. The learned judge who tried the case overruled said offer upon the ground that, under such written contract, the anticipated monthly deliveries of the op-

tioned bonds could not be made until after the expiration of the time for the delivery of such sold bonds, which he fixed as May 1, 1909. He offered the plaintiffs the privilege of amending their statement of claim by averring that the contract had been modified by the parties thereto in order to allow such anticipation. This, however, the plaintiffs declined to do, and stood upon their statement of claim as herein set forth. The learned judge thereupon directed a verdict for the defendant. In this rejection of the evidence offered and subsequent direction of a verdict the learned judge erred.

While the terms of the contract in several particulars, including these relating to the exact time when the deliveries of the optioned bonds were to be made and when the right to anticipate such deliveries could be invoked, are not as clear and definite as they could have been made, and some obscurity as to the meaning of the parties in these particulars exists, yet, when they are read in the light of the whole context, the following propositions are sufficiently established:

First. That the plaintiffs obtained an exclusive option which went into effect on the execution of the contract and which could not be abrogated by the defendant, unless and until the plaintiffs failed to make the required monthly purchases (a) of the bonds sold outright, and (b) of the optioned bonds after such option was exercised.

Second. That the right to anticipate deliveries attached to both classes of sales and was to enable a sale of a larger amount of bonds at one time than the plaintiffs were compellable to take.

Third. That if anticipations were made, whether of the one or the other class of sales, the requirements to take $25,000 of bonds monthly were suspended until such time as would have elapsed had the bonds been taken in regular monthly installments, instead of in advance thereof.

Fourth. That the duty of consulting defendant before plaintiffs fixed the price at which defendant's bonds were to be offered applied to the optioned bonds as well as to those sold outright, though a strict grammatical construction would limit the phrase "the same" occurring in such requirement of paragraph 6, to such sold bonds, and that, as the optioned bonds were to be sold to plaintiffs at a price higher than that fixed for the other bonds, the maximum not being specified, but varying with, and depending upon, conditions yet to materialize, the time for exercising the right of anticipating deliveries of such optioned bonds, as well as the determining of the price to be paid therefor, depended largely upon the discretion of the defendant reasonably exercised, as such duty of consultation was primarily for the protection of defendant.

By the light thus shed upon the 'general intention and purpose of the contract, the concluding clause of paragraph 2, stipulating that the deliveries of the optioned bonds, "are to succeed immediately the deliveries of the bonds purchased mentioned in paragraph 1," is not to be given such an inexorably literal interpretation as to prevent either party from showing that, before any controversy arose concerning the time of exercising such option and the right of anticipation thereunder, they had in selling optioned bonds given it a practical con-

struction at variance with such literal meaning. To ascertain the actual intent of the parties in making a contract is the desideration of all rules of interpretation.

[1] When in the performance of a written contract both parties give it a practical construction, before any controversy has arisen in regard thereto, such construction, rather than its literal meaning, will prevail; for, as Lord Chancellor Sudgen, in Attorney General v. Drummond, 1 Dru. & Wal. 353, 366, affirmed 2 H. L. Cas. 837, said: "Tell me what you have done under a deed, and I will tell you what that deed means." Unless the language is so clear as to admit of no reasonable controversy as to its meaning, the court is not likely to go astray if it enforces that construction which the parties, without coercion, have themselves acted upon. District of Columbia v. Gallaher, 124 U. S. 505. 8 Sup. Ct. 585, 31 L. Ed. 526; Lowrey v. Hawaii, 206 U. S. 206, 222, 27 Sup. Ct. 622, 51 L. Ed. 1026; Davis v. Alpha Portland Cement Co., 142 Fed. 74, 76, 73 C. C. A. 388; Chicago G. W. Ry. Co. v. Northern Pac. Ry. Co., 101 Fed. 792, 795, 42 C. C. A. 25; Manhattan Life Ins. Co., v. Wright, 126 Fed. 82, 87, 61 C. C. A. 138; Central Trust Co. of N. Y. v. Wabash St. L. & P. Ry. Co. (C. C.) 34 Fed. 254.

[2] The evidence excluded relating to the conduct of the parties concerning such option and anticipation, ere any controversy arose between them in regard thereto, tending to prove such a contract as plaintiffs alleged in their statement of claim, and upon which they assigned their breach, was material and relevant, and should have been received and the parties permitted to try out the issue, viz., under which of the alleged agreements such $100,000 of bonds were purchased.

The judgment is therefore reversed, with costs, and the record remanded, with instructions to grant a new trial.