### SHERWOOD v. AMERICAN SUGAR REFINING CO.

(Circuit Court of Appeals, Second Circuit. May 11, 1925.)

No. 306.

Shipping ⬤�439(3)—Contract for hiring of derrick boat, in view of practical construction, held based on "calendar day" of 24 hours; "working days."

Under contract for hiring of derrick boat for rental of $35 per day of 10 hours' straight time, including Sundays, holidays, bad weather, etc., subsequently modified to base rental on calendar days, *held*, in view of practical construction by the parties, that derrick was hired for calendar days of 24 hours, which means "working days," which are defined in maritime affairs as running or calendar days on which law permits work to be done, excluding Sundays and legal holidays, but not stormy days, and hence contract was not breached by use of derrick in excess of 8 hours per calendar day.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Working Days; Second Series, Calendar Day.]

Appeal from the District Court of the United States for the Eastern District of New York.

Libel by E. C. Sherwood against the American Sugar Refining Company. Decree for libelant (3 F.[2d] 332), and respondent appeals. Reversed.

Haight, Smith, Griffin & Deming, of New York City (Clarence Bishop Smith, of New York City, of counsel), for appellant.

Macklin, Brown & Van Wyck, of New York City (Horace L. Cheyney, of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. On April 16, 1920, the Arthur McMullen Company wrote to the firm of Stone & Webster, who were the agents of the appellant, proposing to charter a derrick boat. Its proposition was to charter this "derrick boat now at Baltimore to you for $35 per day' of 10 hours' straight time, including Sundays, holidays, bad weather, etc., * * * to start when boat is taken away from its present location, and to

cease when she is delivered to us at such point as we may direct when you are through with her."

On April 17, 1920, it again wrote to Stone & Webster, saying:

"Referring to telephonic conversation this morning with Mr. Hamilton, we beg to confirm rental to you of our derrick boat and locomotive crane, now located at Baltimore, as per our letter of April 16th, with the exception that we waive the requirement for a 10-hour day on the derrick boat, as you have given us to understand that you expect to work only one shift of 8 hours, and we further agree to accept delivery of the derrick boat and crane at their present location or equal when you are through with them. To make our understanding absolutely clear in regard to time, the boat is rented to you on the basis of calendar days."

On May 10th, an informal order was drawn up renting the boat. On May 28th, the appellee wrote Stone & Webster, announcing that he had acquired title to the derrick and added:

"As the new owner, I would like to have you issue a new order to me covering the rental of this equipment, to replace your order No. 252 of May 10th issued to Mr. Arthur McMullen; rental date beginning April 20, 1920, for a minimum rental period of six months, on the same terms and conditions as shown in said order No. 252, and as evidenced by former owner's correspondence with you."

As requested, on June 4, 1920, such an order was issued which was similar to that issued to the prior owner. This order contained the following: "Per working day, $35. If used on Sundays, same rate to apply."

These letters and orders constituted the contract of hire. It appears that the appellant refused to accept the renting for $35 per day of ten hours' straight time, including Sundays, holidays, bad weather, etc.," and in that letter the understanding was made "absolutely clear in regard to time, the boat is rented to you on the basis of calendar days." The derrick boat was used by the appellant from April 20, 1920, to and including April 18, 1921. It was rented without a crew, and the appellant furnished and paid for the crew. On June 7, 1920, the appellee wrote to the appellant that, since they were obliged to return the boat in the condition that she was leased, they would probably want to cover her with insurance. In this connection the appellant wrote that the value of the boat with its equipment was $10,000. On October 6, 1920, the appellee wrote appellant to the effect that investigation would reveal to it

that it was the custom in the trade to make an additional charge of 75 per cent. of the daily rate for a second shift, and asked to hear from the appellant regarding the claim. On October 9, 1920, the appellant wrote that they had made investigation and found that the derrick had been working a few hours overtime each night for five weeks since July 29th, but disclaimed monetary liability therefor.

Although the appellant continued to hire the derrick from the appellee, and stated that it would not continue to hire the derrick from the appellee unless its stand on this matter was agreed to, the derrick remained in the appellant's employ until January 18, 1921, and from this it is contended that the appellee acquiesced in the appellant's construction of the contract that the derrick was chartered for a calendar day, and not for a day of eight hours, and for extra hire to work longer. It is conceded that payment was made at the rate of $35 per day, except Sundays and holidays, as provided by the charter hire. The court below awarded a decree for appellee for additional compensation at $35 per day for the extra hours, beginning July 29, 1920, to October 16, 1920.

It is clear that the derrick was hired on a basis of calendar days; that is what the parties intended in the original charter. It is likewise clear that by the letter of September 17th the 10-hour limitation was eliminated, and the rental was agreed upon for the calendar day. A calendar day is 24 hours, not 10 hours. The appellee in his first letter expressly agreed that the derrick should be continued on the terms and order of the previous correspondence. It will be noted that, when at first rented, the appellant objected to the limitation of a 10-hour day, and it is very unlikely that it would have asked for a more unfavorable contract to it, by agreeing to an 8-hour day at $35. It uses the word "waive," for it waived the requirement of a 10-hour day, and by that it evidently limited its demand that the derrick be used for a 10-hour day only at $35 per day, and to change the phrase, so as to rent it for a full calendar day.

It was no breach of the contract to use the derrick overtime, in excess of 8 hours per calendar day. Indeed, this was sharply called to the attention of the appellee in the letter of May 28, 1920, wherein it was stated that at the end of the 6 months period, should appellant desire to continue the lease of the derrick, he would be glad to continue it on the same terms and conditions. The claim is that the extra time or extra shift started on Jan-

uary 29th, and the appellee continued to accept pay for 7 months without any claim for overtime. It was not until October 9th that the appellee made claim for overtime; claiming 75 per cent. additional. In the performance of the contract, both parties seem to have given a practical construction to it which supports the position of the appellant, and such position should now prevail. Otis v. Pittsburgh, etc., Coal Co., 199 F. 86, 117 C. C. A. 598. The expression "calendar day" we think is equivalent to another expression often used in admiralty, "working days." It has a settled and definite meaning; it means days as they succeed each other, exclusive of Sundays and holidays. Pedersen v. Eugster (D. C.) 14 F. 422. The term "working days" means, in maritime affairs, running or calendar days on which the law permits work to be done, but excludes Sundays and legal holidays, but not stormy days. Sorensen v. Keyser, 52 F. 163, 2 C. C. A. 650; Tweedie Trading Co. v. Pitch Pine Lumber Co. (D. C.) 156 F. 88. Because the libel should have been dismissed below, the decree must be reversed.

Decree reversed, with costs.