### LOWERY v. WESTHEIMER *et al.*

No. 7009. Opinion Filed October 10, 1916.

(160 Pac. 496.)

1. DEEDS—Homestead—Form of Conveyance—Consent to Conveyance of Homestead—"Joined by My Wife." In a suit for possession and to clear title to a certain tract of land, the allotment of F. L. and a part of the homestead of the family, a deed purporting to convey said land, reciting in the granting clause that "I, T. M. L., joined by my wife, F. L., * * * do grant" the same (describing it) to defendants, W. and D., and which was duly subscribed and acknowledged by both T. M. L. and F. L., his wife, **held,** that the deed not only contains apt words of grant on the part of F. L. sufficient to convey her title to the land, but is in form sufficient to satisfy the statute (Rev. Laws 1910, sec. 1143), as indicating the consent of the husband to the sale thereof as part of the homestead of the family.

2. SAME—Construction—General Rules. In construing words of grant contained in a deed, where the words are doubtful or ambiguous, the language being that of the grantor, all doubtful words are construed most strongly against him and most favorably and beneficially for the grantee. A construction will be avoided, if possible, which will render the instrument frivolous

and ineffectual; it being presumed that the parties thereto intended the deed to have some operation.

3.    **SAME—Practical Construction by Parties.** Where the meaning of the terms used in a deed is not clear, the subsequent acts of the parties showing the construction they have put upon the same themselves before the land became a subject of controversy are to be looked to by the court.

(Syllabus by the Court.)

*Error from District Court, Carter County;*
*A. Eddleman, Judge.*

Action by Florence Lowery and another against Max Westheimer and others. Judgment for defendants, and plaintiff Florence Lowery brings error. Affirmed.

*Ledbetter, Stuart & Bell, Stuart, Cruce & Cruce, Bayard T. Hainer, E. Robitaille,* and *Baldwin & Spradling,* for plaintiff in error.

*Geo. S. Ramsey, Johnson & McGill, J. C. Thompson, L. S. Dolman,* and *Edgar A. de Meules,* for defendants in error.

TURNER, J.   On May 25, 1914, in the district court of Carter county, Florence Lowery and Thomas M. Lowery, Jr., sued Max Westheimer, David Daube, David Gunsburg, and Southwestern Petroleum Company, and in their petition alleged that they were the owners and entitled to the immediate possession of a certain tract of 250 acres of land (describing it), 110 acres of which was her homestead allotment as an intermarried Choctaw, and 140 acres of which was his homestead allotment as a Choctaw by blood. They further alleged that defendants Westheimer and Daube were in possession of the land, claiming title thereto by virtue of a certain warranty deed dated November 26, 1910, purporting to be their conveyance of said land to defendants, but which, they say, is fraudulent and not their deed, and, as to her 110 acres, they specifically alleged that Florence Lowery does not ap-

pear as grantor therein, and that the deed does not attempt to convey and does not convey to defendants any right, title, or interest in said 110 acres of land; but nevertheless, they say, defendants are asserting title thereto by reason thereof, and that said deed constitutes a cloud upon her title, and, further, that she received no consideration therefor. They also allege that since said pretended conveyance the defendants (the grantees therein) have executed an oil and gas lease on 60 acres of land in controversy to the defendants Gunsburg and Southwestern Petroleum Company, who were in possession operating oil and gas wells thereon, and converting the proceeds of the oil and gas produced to their own use, and prayed judgment for immediate possession of the property and for rents and profits, and for the concellation of said deed and lease and, in effect, for general relief.

Later, Thomas M. Lowery, Jr., passed out of the case, and the case proceeded as to Florence Lowery, leaving here involved the title to her 110 acres only. For answer, defendants Westheimer and Daube denied the allegations of fraud and want of consideration contained in the petition and stood on their deed, which they alleged was her deed and conveyed to them the title of Florence Lowery to the land. They also admitted the execution of an oil and gas lease to Gunsburg and Southwestern Petroleum Company, as alleged, and stated, as to the remainder of the land, that they were also operating thereon for oil and gas and had erected thereon valuable improvements. Among other things, they also pleaded that plaintiff was estopped, for reasons stated, to deny the validity of her deed and asked for a reformation thereof, should the court hold the same insufficient to pass her title to the land. For answer, Gunsburg and Southwestern Petroleum Company, in effect, set up that their lease covered only 20 acres of the Florence

Lowery land in controversy and that they were innocent purchasers from Westheimer and Daube for value and without notice. After issue joined by reply, in which Florence Lowery pleaded mental incapacity to make the deed, there was trial to the court, who, by agreement of all parties in interest, submitted to the jury certain special interrogatories, answering which they found that Lowery and his wife, on November 26, 1910, executed the deed in controversy; that at the time she did so, she had sufficient mind to understand the nature and consequences of her act; and that she received a part of the consideration of $350 mentioned in the deed. "It being also agreed in open court that all other issues of fact, not embodied in the special interrogatories submitted to the jury, be reserved for finding by the court without further intervention by jury." Pursuant to which, the court thereafter found the same to be that Thomas M. Lowery, Jr., and his wife, Florence Lowery, were, at that time and all other times mentioned in the pleadings, husband and wife and living together as such; that the 110 acres in controversy was a part of the homestead of the family and patented to her, as stated in the petition; that the 140 acres therein set forth was likewise patented to her husband, Thomas M. Lowery, Jr.; that he then found that prior to the deed in controversy, that is, on March 30, 1910, they executed a mortgage on their land described in the petition for $2,700, payable to the Oklahoma Farm Mortgage Company, and another on the same day on the same land for $1,066, payable to the same company; that no part of the proceeds of those mortgages was paid to Florence, but shortly after their execution $500 of the proceeds thereof was paid to Westheimer and Daube in full settlement of a prior mortgage which they held on 180 acres of the land; that about November 1, 1910, Thomas M. Lowery, Jr., for both himself and his wife

Florence, and with her knowledge and consent, opened negotiations with defendants Westheimer and Daube for the sale to them of the 250 acres covered by said mortgage, but neither of defendants ever spoke to Florence concerning the matter up to the time of the execution of the deed.

Pending negotiations, said defendants, through an agent, viewed the land, and later an understanding was reached between the parties in which the Lowerys agreed to convey to Westheimer and Daube the 250 acres covered by those mortgages in consideration that Westheimer and Daube assume and pay the same, and also pay the Lowerys $350 in cash. Accordingly, on November 26, 1910, in the store of Westheimer and Daube in Ardmore, and in the presence of said defendants and each of them, the Lowerys made, executed, and delivered to said defendants the deed in question, which, however, before delivery, was then and there read over and explained to them. Soon thereafter the deed was recorded and immediate actual possession of the land yielded to the grantees, save the 110 acres in controversy, for which the tenant of the grantors in possession thereafter attorned to Westheimer and Daube, and has since continued so to do. It was also found by the court that defendants have since remained in possession, without notice of any claim of defect in said deed; that about September, 1913, the land in controversy became valuable for oil and gas, and in February, 1914, said defendants let contracts thereon to Gunsburg and he to the Petroleum Company for the purpose of development, and they themselves thereon expended large sums of money, so much so that the 110 acres in controversy is now worth $100,000; that the consideration of $4,116 paid for the land was, at the time of the execution of the deed, full, fair, and adequate; that said deferred payment of $350 has been paid, a part by check for $77.56, made payable to Florence Lowery, which

has since been paid on her indorsement. The court further found, as to her 110 acres in controversy, that the Lowerys were in possession by their tenant at the time of the execution of the deed and claimed the same, together with 50 acres of the allotted homestead of Thomas M. Lowery, as the homestead of the family up to September, 1910, since which time they have resided on no part of the 250 acres described in the deed, but have traveled to regain her health. Upon the facts thus found, the court, in effect, held that the deed was the deed of Florence Lowery, and, as such, was valid and binding as a conveyance of her title to 110 acres of her allotted homestead and the homestead of the family therein described, and rendered and entered judgment accordingly. To reverse which she brings the case here, where her counsel contend that the court erred, because, they say:

"That the deed of November 26, 1910, containing, as it does, a description of the separate homestead allotment of Thomas M. Lowery, Jr., the husband, and the separate homestead allotment of Florence Lowery, and the actual residence homestead of herself and family, is void as to her 110 acres, the same being her separate property and the homestead of herself and family, for the reason that it contains no words of conveyance on her part, and does not purport to convey any land belonging to her; that the deed is not such a joint deed of herself and husband as is required by the Constitution and the laws of the State of Oklahoma to convey the homestead."

The deed reads:

"Know all men by these presents: That I, Thomas M. Lowery, Jr., joined by my wife, Florence Lowery, of Hewitt, Carter county, Oklahoma, for and in consideration of the sum of forty-one hundred, sixteen and no-100 dollars ($4,116.00), $350.00 of which is cash in hand paid, the receipt of which is hereby acknowledged, and the assuming of two mortgages, one for the amount of $2,700.00,

one for the amount of $1,066.00 on the land hereinafter described, and in favor of the Oklahoma Farm Mortgage Co., of Oklahoma City, Okla.,

"Do grant, bargain, sell and convey unto Max · Westheimer and David Daube, of Ardmore, Carter county, Oklahoma, the following described real property and premises situated in Carter county, Oklahoma, to wit: (Then follows a description of 140 acres of the homestead allotment of Thomas M. Lowery, Jr., and 110 acres of her homestead allotment.)

"Together with all the improvements thereon, and all the appurtenances thereunto belonging, and warrant the title to the same.

"To have and to hold the said described premises unto the said Max Westheimer and David Daube, their heirs and · assigns forever, free and clear and discharged of and from all former grants, charges, taxes, judgments, mortgages and other liens and incumbrances of whatsoever nature, except the two mortgages, one for the amount of $2,700.00, and one for the amount of $1,066.00, assumed and in favor of The Oklahoma Farm Mortgage Co., of Oklahoma City, Oklahoma, as a part of the consideration of this deed.

"Signed and delivered this 26th day of November, 1910.                              T. M. LOWERY, JR.

"FLORENCE LOWERY.

"State of Oklahoma, Carter county—ss:

"Before me, B. R. Gober, a notary public in and for said county and state, personally appeared on this 26th day of November, 1910, Thomas M. Lowery and Florence Lowery, husband and wife, both to me well known to be the identical persons who executed the within and foregoing instrument, and each for themselves acknowledged to me that they had executed the same as their free and voluntary act and deed, for the purpose and uses therein set forth.

"Witness my hand and seal the day and year above written.              B. R. GOBER, *Notary Public.*   [Seal.]

"My commission expires 8-22, 1911."

Against the validity of the deed it is urged:

"The recital: 'I, Thomas M. Lowery, Jr.,  *   *   * do grant, sell and convey,' excludes the wife as an active grantor in the deed. The deed does not purport to convey the separate property of Florence Lowery, occupied as a family homestead. The expression, 'I, Thomas M. Lowery, Jr., joined by my wife, Florence Lowery,' is wholly insufficient to bind her as an active participant in the conveyance.  *   *   * The use of the additional words, 'joined by my wife, Florence Lowery,' does not in any way qualify the statement of Thomas Lowery that it is he that is selling.

"The widest scope that can be given to the recital 'joined by my wife, Florence Lowery,' is that she consents to the selling by Thomas Lowery. But this is a clear infraction of the statute. Neither one can sell alone, neither can consent that the other may sell; but the selling, that is, the actual transfer of title, must be the joint coequal act of both."

Not so. While there can be no doubt of the correctness of the rule laid down by Chief Justice Taney, in *Agricultural Bank of Miss. v. Rice,* 4 How. 225, 11 L. Ed. 949, that "*   *   * in order to convey by grant, the party possessing the right must be the grantor, and use apt and proper words to convey to the grantee, and merely signing and sealing and acknowledging an instrument, in which another person is grantor, is not sufficient," assuming that the 110 acres described in the deed—the allotted homestead of Florence Lowery—was also the homestead of the family, the deed not only contains apt words of grant on her part sufficient to convey her title to the land, but is in form sufficient to satisfy the statute as indicating the consent of the husband to the sale thereof as a part of the homestead of the family.

Article 12, sec. 2, of the Constitution, provides that the homestead of the family shall not be sold by the owner, if married, without the consent of his or her spouse, given in

such manner as may be prescribed by law. Stripped to the point by Rev. Laws 1910, sec. 1143, it is prescribed how this may be done. It provides:

"No deed  *  *  *  relating to real estate  *  *  * shall be valid until reduced to writing and subscribed by the grantors; and no deed  *  *  *  relating to the homestead exempt by law  *  *  *  shall be valid unless in writing and subscribed by both husband and wife.  *  *  *"

Which means, when applied to the deed in question, that in order to convey the homestead of Florence Lowery, exempt by law as the homestead of the family, she must appear therein as the party grantor conveying title to the 110 acres in controversy, and that the deed must be subscribed as here, by both herself and her husband, Thomas M. Lowery, Jr., as evidence of his consent to the conveyance. But, it is contended, the vice of this deed is in the fact, apparent on its face, that Florence Lowery does not therein appear as a party grantor, but that she does appear therein only as consenting to the grant by him of his 140 acres thereby conveyed; as to 40 acres of which such consent was necessary, the same being a part of the homestead of the family. And, it might be said, there does appear on the face of the deed a doubt as to whether Florence Lowery, when therein she said she "joined," and by her act did join her husband in the deed, merely thereby intended to consent to the conveyance of his 140 acres of the land, including 40 acres of the homestead of the family, or whether she intended, in addition thereto, to convey her 110 acres. In other words, whether she merely intended to join him in the execution of the deed in order to evidence her consent to his conveyance of 40 acres of the homestead, or whether she, by including 110 acres of her land in the deed, intended not only that, but also to join him in the deed as a party grantor and convey her 110 acres. This doubt thus arising

sends us to a construction of the deed to determine whether it can fairly be said that she appears therein as a party grantor; and, first, to the rules of construction.

In *Charles River Bridge v. Warren Bridge et al.*, 11 Pet. at page 588, 9 L. Ed. 773, the court said:

"It is a well-known rule in the construction of private grants, if the meaning of the words be doubtful, to construe them most strongly against the grantor. But it is said that an opposite rule prevails in cases of grants by the king; for, where there is any doubt, the construction is made most favorably for the king, and against the grantee. * * * But it is a rule of very limited application. To what cases does it apply? To such cases only, where there is a real doubt, where the grant admits of two interpretations, one of which is more extensive, and the other more restricted; so that a choice is fairly open, and either may be adopted without any violation of the apparent objects of the grant. If the king's grant admits of two interpretations, one of which will make it utterly void and worthless, and the other will give it a reasonable effect, then the latter is to prevail; for the reason (says the common law) 'that it will be more for the benefit of the subject, and the honour of the king, which is to be more regarded than his profit.' * * * And in every case, the rule is made to bend to the real justice and integrity of the case."

In *Thomas et al. v. Hatch*, 3 Sumn. 170, Fed Cas. No. 13,899, in the headnotes it is said:

"Deeds are always construed according to the force of the language used by the grantor, and the apparent intention of the parties deducible therefrom."

2 Devlin on Deeds (3rd Ed.) sec. 340, lays down the rule thus:

"In construing the words of such a grant, where the words are doubtful or ambiguous, several rules are applicable, all, however, designed to aid in ascertaining what was the intent of the parties; such intent, when ascertained, be-

ing the governing principle of construction. And first, as the language of the deed is the language of the grantor, the rule is that all doubtful words shall be construed most strongly against the grantor, and most favorably and beneficially for the grantee. Again, every provision, clause, and word in the same instrument shall be taken into consideration in ascertaining the meaning of the parties, whether words of grant, of covenant, or description, or words of qualification, restraint, exception, or explanation. * * * Where the meaning is doubtful, evidence as to the acts of the party may be admitted to show the intent."

It seems that the rule of interpretation laid down in Comp. Laws 1909, sec. 1114, has nothing to do with this case. The section reads:

"In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party, except in a contract between a public officer or body, as such, and a private party, in which it is presumed that all uncertainty was caused by the private party."

This for the reason that, as we get the section mediately from California where it is found (Civil Code, 1906) as section 1645 under the title, as with us, of "Interpretation of Contracts," preceding which, in section 1069, is found the rule, under the title of "Interpretation of Grants," that a grant of this kind is to be construed most strongly against the grantor, it would seem that the rule laid down in section 1114, *supra*, was never intended to apply to the construction of deeds, but was intended to be confined to the construction of contracts only. This was, in effect, the holding of the court in *Edwards v. Brusha*, 18 Okla. 234, 90 Pac. 727, where the court took no note of section 1114, and said:

"The rule is well settled that in all cases requiring the terms of a deed to be construed, if there be doubt, the language will be construed most strongly against the grantor."

But, assuming that, by failing to enact a statute similar to that contained in the California Civil Code, sec. 1069, declaring the rule to be as stated, the Legislature intended the deed in controversy to be construed as provided in section 1114, *supra*, applying that rule to the undisputed facts in this case, this deed must be construed most strongly against these grantors and in favor of the grantees. The section provides:

"In cases of uncertainty not removed by the preceding rules (prescribed for ascertaining the intent of the parties) the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor (Mrs. Lowery) is presumed to be such party. * * *" .

And the undisputed facts fail to overcome that presumption. They are that, on the day the deed was executed, T. M. Lowery, Jr., and Florence, his wife, came to the office of the store of the grantees, bringing with them their respective certificates of allotment in order to furnish to the scrivener a description of the land to be conveyed; that there they met one Roland, a cotton buyer, officing in the store, who prepared the deed in question but at whose request, or whether he was acting within the scope of his employment with the grantees, the record fails to disclose. These facts, we repeat, are insufficient to overcome the presumption that the promisor in the deed caused the uncertainty to exist in its terms. This being true, again we assert the rule to be, as stated in the Brusha Case, that this deed must be construed most strongly against the grantors. See, also, 8 R. C. L. sec. 104.

What, then, did she mean, when, by subscribing and acknowledging the deed embracing 110 acres of her land, she adopted as her own the language of the deed and said: "That I, Thomas M. Lowery, Jr., joined by my wife,

Florence Lowery,   *   *   *   do grant," etc? Webster says
that to "join" is to "unite;   *   *   *   to come together; to
combine or unite in time, effort, action; to enter
into an alliance." An "alliance" he defines as "'a union
or connection of interests between parties," etc. And
she did adopt as her own the language of the deed, for
it was said in Perkins Profitable Conveyancing, published
in 1842 (section 158), and has ever since been the law,
that:

"It hath been holden, that a man shall be bounden by
the speaking, if another man, by averment thereof, in put-
ting his seal to it, and delivering of it as his deed."

And again (section 159):

"And it is to be known that at this day, a man shall
be bounden by putting his seal unto a deed indented, and
delivery of the same, and yet the words within the deed
are spoken by another man."

And so we say that, when she said she joined with her
husband in the execution of this deed, she, in effect, said,
not that she consented to what he did, but that she, being
united in interest, united with him in what he did; that is,
united with him in the effort or act of making the deed;
that is, joined with him in the grant evidenced thereby;
and that hence, by so uniting, she became a party grantor
as to all she could grant by the deed, which was her 110
acres described therein. It will not do to say that, by
joining with her husband in the deed, as she did, she
meant to give her consent only to the conveyance of his
140 acres, or at least to 40 acres of the homestead of the
family thereby conveyed by him. This for the reason
that, while the language of the deed does indicate such
consent, to confine it to that would render inoperative that
part of the deed contained in her implied words of grant,
followed by a description of her land, and make it, in

effect, almost frivolous as to her.   17 Am. & Eng. Encyc. of Laws, 18, says:

"A construction will be avoided, if possible, which will render the instrument frivolous and ineffectual; it being presumed that the parties intended the instrument to have some operation."

This deed is nothing more than an executed contract. As to the interpretation of contracts, Rev. Laws 1910 provides:

"Sec. 951.   The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."

"Sec. 953.   A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties."

"Sec. 957.   A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates."

In *Sloss-Sheffield Steel & Iron Co. v. Lollar*, 170 Ala. 247, 54 South. at page 274, the court said:

"While it is true that the body of the deed must show who are the grantors, the rule does not require the names of the grantors to be inserted in the body of the deed.   The requirement of the rule is met, if from the deed in its entirety, enough is shown from which, by the aid of extrinsic evidence, the names of the grantors can be made certain."

*Schley v. Pullman Car Company*, 120 U. S. 575, 7 Sup. Ct. 730, 30 L. Ed. 789, was ejectment in which the plaintiff in error claimed title to certain real estate in Cook county, Ill., of which the Pullman Company was in possession.   It was stipulated that judgment be entered for the defendant, if the court was of opinion that a cer-

tain deed was valid and binding as a conveyance by the husband and wife of the real estate described therein. The pertinent part of the deed in question read:

"This indenture, made this twenty-sixth day of May, in the year of our Lord one thousand eight hundred and fifty-six, witnesseth: That I, Christina Lynn, sister and heir at law of Henry Millspaugh, deceased, * * * of the first part, in consideration of the sum of forty-three dollars in hand paid by * * * party of the second part, the receipt of which is hereby acknowledged, do hereby release, grant, bargain, and quitclaim unto the said party of the second part * * * all her right, title, claim and interest in that certain tract of land (describing it) to have and to hold," etc.

"In witness whereof the said grantor—have hereunto set our hands and seals the day and year first above written.            CHRISTINA LYNN.    [Seal.]
                 "WILLIAM LYNN.    [Seal.]"

The deed was duly acknowledged by both the signers of the deed. The court, being of opinion that the deed was valid and passed to the grantee all the right, title, and interest of Christina Lynn and William Lynn, her husband, in the real estate described therein, entered judgment for defendant. The plaintiff insisted that the deed was void under the laws of Illinois, upon two grounds, the first of which was that the husband was not a party to the deed. Whether it was in form sufficient to satisfy the statute turned upon a section of a certain act, the pertinent part of which read:

"When any feme covert, not residing in this state, being above the age of eighteen years, shall join with her husband in the execution of any deed * * * relating to any lands or real estate, situate within this state, she should thereby be barred of and from all estate, * * * therein, in like manner as if she was sole and of full age."

The question before the court was whether Christina
Lynn, within the meaning of that statute, joined with her
husband in the executon of the deed. The court stated the
contention of the parties thus:

"The plaintiff contends that she did not, because the
name of the husband is not expressly designated in the
body of the deed as a grantor. It is argued that as Wil-
liam Lynn, the husband, had during coverture a freehold
interest jointly with his wife in her estate of inheritance,
with absolute ownership of the rents and profits of the
wife, the requirement in the act of 1847, that she should
join him in the execution of any deed for real estate, was
a recognition of his supremacy and right of control, and
necessarily implied that he, as grantor, so named in the
granting or operating clauses, must pass whatever interest
he had, and thereby, also, express 'his willingness that
his wife should convey her title or estate. While this posi-
tion is sustained by some adjudications, it is necessary to
inquire as to the state of the local law; for the rights of
the parties must be governed by the requirements of that
law in respect to the mode in which real property situ-
ated within the limits of that state may be conveyed or
transferred."

And, after reviewing certain cases, said:

"While those cases do not cover the precise question
under consideration, we are of opinion that, under the
principles announced in them, the deed of May 26, 1856,
must be upheld as a valid transfer under the law of Illi-
nois of the interest of Christina Lynn and her husband.
If, as adjudged by the Supreme Court of the state, the
wife, whose name did not appear in the operative clause
of the husband's conveyance of his lands, is to be held as
having joined him therein and surrendered her right of
dower, by simply signing the deed and acknowledging it
in conformity with the statute, and upon privy examina-
tion duly certified; if, under a statute making it lawful
for husband and wife 'to execute' a conveyance of her real
estate, they will both be held to have executed a convey-

ance of her separate property where her name appears, but that of the husband does not appear, in the granting clause of the deed, but they both sign and acknowledge it in the mode required by law; and if the wife's 'estate of homestead' can be conveyed by a deed, signed and duly acknowledged by herself and husband, her name, however, not appearing in the body of deed—it would seem to follow that, within the meaning of the act of 1847, and according to the tendency of the decisions of the Supreme Court of the state, the wife joins with her husband in the execution of a conveyance of her estate of inheritance where her name alone appears in the granting clause, but the deed is signed by both herself and husband, is acknowledged by both, and is certified as required by law. Such conveyance, so signed, acknowledged, and certified, of the wife's land, seems to be as effectual, under the local law, to invest the grantee with the title and interest of both husband and wife as if his name had also appeared in the granting clause."

In the headnotes to that case it is said:

"A deed, dated May 26, 1856, by C. L. grantor, described as 'sister and heir at law of H. M.,' and as 'of the County of St. Clair and State of Michigan,' which conveyed to the grantee a tract of land in Illinois, and was signed and sealed by C. L. and W. L., the name of W. L. not appearing in the granting clause of the deed, and which was acknowledged May 27, 1856, by said 'C. L. and W. L., her husband,' *held* sufficient to pass said title of husband and wife, under the statute of Illinois of February 22, 1847, then in force, respecting the conveyance of lands or real estate situate in Illinois by a feme covert not residing within the state, and respecting her joining with her husband in the execution of the deed."

Now, if in that case William, the husband and owner during coverture of the freehold, jointly with his wife, although entirely omitted from the granting clause in the deed, was, by signing and acknowledging the same, held to have joined with her as such and to have passed

his freehold interest jointly with the wife in her estate of inheritance conveyed by the deed, we can and do hold that where, as here, Florence, the wife, expressly joins with her husband as a party grantor in the granting clause of the deed, and executes and acknowledges the same, the deed is her deed and in form sufficient to pass her title, not only to the 110 acres described therein, but to the homestead of the family.

In fact, we can see no substantial difference between the granting part of a deed which reads, as here, "joined by my wife," and a deed which simply says "and wife." This for the reason that both mean "acting in conjunction with my wife"; and, when in each instance the wife executes the deed, she adopts the language of the deed and, in effect, says that she acts in conjunction with him, or that she joins with him in the effort or act of making the deed as a party grantor in the grant evidenced thereby.

In *Smith v. Carmody*, 137 Mass. 126, the facts were that A. died, seised of a parcel of land bounding on a street 128 feet and which was 50 feet wide. There was set off to his widow as dower a parcel across the north end measuring 49 feet on the street and bounded on the south by a fence. Later, by partition among the heirs, the remainder of the land became the property of B., who conveyed it mediately to his wife. On the death of the widow, her administrator assumed to convey the estate set off to her in dower and included in the boundaries a strip of land two feet seven inches south of the dower estate, and B. and his wife executed a deed thereto to his grantee. Thereafter the wife brought suit in ejectment for the two-foot seven-inch strip, claiming that the deed conveyed the title of her husband only to the land with a release by her of both dower and homestead, and the lower court so held.

58—19

But, on appeal, the Supreme Court held not so, but that the deed was not only one of release and quitclaim by both husband and wife, but conveyed all their interest in the land. The pertinent part of the deed reads:

"That I, Chas. T. Smith, * * * and Ellen Smith, wife of the said Charles, * * * in consideration of $1.00 paid * * * do hereby remise, release and forever quitclaim unto * * * a certain parcel of land (describing it) * . * * and I do hereby * * * warrant and defend the same to said grantee. * * * And for the consideration aforesaid, I, Ellen Smith, wife of Charles T. Smith, do hereby release unto the said grantee * * * both homestead and dower in the granted premises.

"In witness whereof we, the said Charles T. Smith and Ellen Smith, * * * hereunto set our hands and seals * * *"

Now, if the court could there hold, in effect, that the words, "I, Chas. T. Smith and Ellen Smith, wife of said Charles, do hereby convey," were apt words of grant sufficient to release and quitclaim her interest in and to the fee in the land described in the deed, although the subsequent part of the deed in which he covenanted to defend the title would seem to make those words of grant his only, and that part of the deed in which she, for the consideration expressed therein, released her homestead and dower, would seem to be all she effected by the deed, we can and do hold that the words of grant under construction, which practically amount to the same thing, are sufficiently apt to convey the title of Florence Lowery to her 110 acres of land described in the deed.

This is in keeping with the practical construction placed on the deed by the parties to it before her 110 acres of land became valuable for oil and gas, which was some three years subsequent to the date of the deed.

In *Otis v. Pittsburgh Westmoreland Coal Co.*, 199 Fed. 87, 117 C. C. A. 598, the United States Circuit Court of Appeals for the Third Circuit said:

"When in the performance of a written contract both parties give it a practical construction, before any controversy has arisen in regard thereto, such construction, rather than its literal meaning, will prevail; for, as Lord Chancellor Sudgen in *Attorney General v. Drummond*, 1 Dru. & Wal. 353, 366, affirmed 2, H. L. Cas. 337, said: 'Tell me what you have done under a deed, and I will tell you what that deed means.' Unless the language is so clear as to admit of no reasonable controversy as to its meaning, the court is not likely to go astray if it enforces that construction which the parties, without coercion, have themselves acted upon. *District of Columbia v. Gallaher*, 124 U. S. 505, 8 Sup. Ct. 585, 31 L. Ed. 526; *Lowery v. Hawaii*, 206 U. S. 206, 222, 27 Sup. Ct. 622, 51 L. Ed. 1026; *Davis v. Alpha Portland Cement Co.*, 142 Fed. 74, 76, 73 C. C. A. 588; *Chicago G. W. Ry. Co. v. Northern Pacific Ry. Co.*, 101 Fed. 792, 795, 42 C. C. A. 25; *Manhattan Life Ins. Co. v. Wright*, 126 Fed. 82, 87, 61 C. C. A. 138; *Central Trust Co. of N. Y. v. Wabash, St. L. & P. Ry. Co.* (C. C.) 34 Fed. 254."

In *Old Colonial Trust Co. v. Omaha*, 230 U. S. 118, 33 Sup. Ct. 972, 57 L. Ed. 1410, the court said:

"Generally speaking the practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling influence."

In *American Soda F. Co. v. Gerrer's Bakery*, 14 Okla. 258, 78 Pac. 115, 2 Ann. Cas. 318, we said:

"Where a written contract contains provisions which render it uncertain or ambiguous, the court may ascertain and give effect to the mutual intention and understanding of the contracting parties."

And in *Rider v. Morgan,* 31 Okla. 98, 119 Pac. 958, we said:

"Where the meaning of the terms used in a written contract is not clear, the subsequent acts of the parties showing the construction they have put upon the agreement themselves are to be looked to by the court."

See, also, *Minnetonka Oil Co. v. Cleveland Vitrified Brick Co.,* 27 Okla. 180, 111 Pac. 326.

On this point, the evidence discloses that the parties grantor to the deed, after its execution, after yielding possession to the grantees, frequently asserted that they had sold the land therein described; that they were aware the grantees were receiving rents and profits therefrom, and, outside of the 110 acres in controversy, had expended large sums of money thereupon; and that they made no objection, up to the time of the bringing of this suit. In the meantime, the grantees had paid off the mortgages assumed, and the grantors had spent the $350 cash consideration received. Immediately after signing the deed, Florence Lowery stated that her home was gone, that they had no more to squander, and that they had left the place and were living elsewhere. Again, shortly thereafter she stated that her son's land was the only land they had left, but made no claim to the land in controversy, although the family at that time was in straightened financial circumstances. From all of which, it appears, and we are of opinion, that at the time she executed the deed in question she intended to convey her 110 acres of land therein described; that such she did by words of grant sufficiently apt to convey her title thereto; and that the deed is in form sufficient to satisfy the statute as indicating the consent of the husband to the sale thereof as part of the homestead of the family. We say the deed is in form sufficient to satisfy the statute and convey the home-

OCTOBER TERM, 1916.—Vol. LVIII.    581

stead, for the reason that the same is not questioned, except upon the ground that the deed contains no words of grant sufficiently apt to convey her title to the land, which, being decided adversely to plaintiff's contention, renders the point untenable.

Let the judgment of the trial court be affirmed. It is so ordered.

All the Justices concur.