STATE LIFE INS. CO. et al. v. STATE
ex rel. KEHN, County Atty.

No. 30634. Nov. 17, 1942.

Rehearing Denied Jan. 19, 1943.

Application for Leave to File Second
Petition for Rehearing Denied
April 20, 1943.

135 P. 2d 965.

Cohoon & Heiple, of Oklahoma City, George H. Batchelor, of Indianapolis, Ind., and Rainey, Flynn, Green & Anderson, of Oklahoma City, for plaintiff in error State Life Insurance Company.

C. B. Holtzendorff, of Claremore, for plaintiffs in error Lacey and Steele.

H. A. Kehn, County Atty., of Pryor, Mac Q. Williamson, Atty. Gen., and Houston W. Reeves, Asst. Atty. Gen., for defendant in error.

GIBSON, J. This action was instituted by the state pursuant to 18 O. S. 1941 §§ 86-861 against a corporation to collect the so-called statutory penalty for overholding title to real estate. The individuals Lacey and Steele were joined as defendants by reason of their interest and claims under a sale contract entered into between them and the corporation. Judgment was for plaintiff, and defendants appeal.

The defendant corporation acquired title to the lands through the process of debt collections in the year 1927. On January 30, 1937, it entered into the aforesaid sale contract with Lacey and Steele as a copartnership whereby said corporation for a valuable consideration agreed to sell the lands to them on annual installments, the last to become due December 1, 1946. The portion of said contract principally involved here reads as follows:

"That for and in consideration of the payment to it of the sum of Ten Dollars ($10.00) cash in hand, the receipt of which is hereby acknowledged, and the payments and considerations hereinafter provided, the first party has this day bargained to sell unto the second party and the second party has agreed to purchase upon the terms hereinafter set forth the following described real estate situate in the County of Mayes, State of Oklahoma, to wit:"

For the purpose of clarifying said contract from the standpoint of its legal effect as a present conveyance of the equitable title, the parties entered into a written agreement under date of June 7, 1938. The material portion thereof reads as follows:

"Now Therefore, for the purpose of clarifying said contract and resolving any doubt concerning the construction and legal effect thereof, it is hereby understood and agreed by and between the parties hereto:

"1. That the parties to said contract of January 30th, 1937, purposed and intended to effect and consummate a present and immediate sale of the real estate therein described, and by virtue thereof, the first party did sell and the second parties did purchase the real es-

tate therein described, the second parties acquiring full and complete dominion and control over the same as purchasers; and in order to confirm and more certainly effectuate such purpose and intent, it is hereby agreed by and between the parties hereto that the first party has granted, bargained and sold, and by these presents does hereby grant, bargain and sell unto the second parties as joint tenants with the right of survivorship, and not as tenants in common, for the consideration recited in the contract aforesaid, all of the real estate described in said contract, (excepting such as has heretofore been sold and conveyed to third parties,) situated in Mayes County, Oklahoma, to wit:"

That provision had direct reference to the contract of January 30, 1937, above.

The statute became effective May 8, 1937, or subsequent to the first contract and prior to the second one.

The state contends that the contract of January 30, 1937, was insufficient to divest the corporation of the title to the real estate, and that it retained title thereto within the meaning of the statute at least until the date of the execution of the second contract, June 7, 1938. And it is further asserted that the latter contract is immaterial to the issues since the state seeks to recover the penalty only for the year 1937 and 1938.

Much is brought out in the evidence concerning the relationship existing between the corporation and Lacey and Steele. It is shown, as found by the trial court in its special findings of fact, that Lacey and Steele were employees of the corporation. The good faith in the execution of the sale contract is not attacked. And the court made no finding on that issue. The only function of the court was to construe the contract of January 30, 1937, and to interpret the same from the standpoint of the intention of the parties as gathered from the written provisions of the contract, the surrounding circumstances and the subsequent acts of the parties done pursuant thereto, and so to determine the legal effect thereof as a conveyance.

It is apparent that the trial court so viewed the matter. This is revealed by its conclusion of law to the effect that the two contracts "did not constitute a sale and disposition of the property therein described sufficient to comply with the requirements of article 1, ch. 46, Session Laws of 1937, requiring corporations owning real estate acquired in foreclosure of mortgages, or in consideration of debts, for a period of more than seven years, to immediately sell and dispose of such property; and the court concludes that the contracts entered into and involved herein amounted to nothing more than an agreement to sell on the part of the defendant, State Life Insurance Company, and an agreement to purchase on the part of Lacey & Steele, and that the legal and equitable title in said real estate, under the terms of the contract and the supplemental contract and the evidence, facts and circumstances of the case, did not, as a matter of law, pass from the defendant corporation to Lacey & Steele."

The issue, then, is whether the contract of January 30, 1937, as interpreted according to the rule above stated, was sufficient under the statute to divest the corporation of the title to the lands here involved.

If said contract was sufficient to pass the equitable or beneficial title to Lacey and Steele, the court erred in rendering judgment for plaintiff.

The evidence shows that immediately upon the execution of the contract of January 30, 1937, Lacey and Steele went into possession of all the lands and commenced to collect the rents and profits for themselves. They exercised complete dominion and ownership, subject to certain reservations in favor of the corporation looking merely to the preservation and protection of its security for the purchase price. Sometime prior to June 23, 1938, the county attorney, on the assumption that the first contract was insufficient under the law to transfer title to Lacey and Steele, demanded of the corporation payment of the statutory penalty for overholding title. Thereupon the second contract,

above, explaining and clarifying the first contract with reference to the intention of the parties, was entered into. Subsequently, on June 23, 1938, this action was commenced.

The state takes the position that the first contract was insufficient in its express provisions to constitute a present conveyance of the lands, and, as a result the corporation would be subject to the penalty, and the land to the lien thereof, at least until the date of the execution of the second contract, which, it is said, may have actually contained words sufficient to constitute a conveyance in praesenti.

Plaintiff cites certain cases apparently holding that a granting clause such as that contained in the first contract was insufficient to convey an equitable title. In this connection it is said that since the statute, which was intended to vitalize section 2, art. 22, of the Constitution, requires that where lands are owned by a corporation as in this case for more than seven years "next preceding the effective date of this act, the corporate owner thereof shall immediately sell and dispose of said real estate," the sale and disposition, in order to satisfy the requirement, must be an actual transfer in praesenti of the beneficial interest.

It is insisted that the first contract did not accomplish such a sale. The alleged inadequate portion thereof reads "the first party has this day bargained to sell unto the second party and the second party has agreed to purchase . . . the following described real estate. . . ." This language, says plaintiff, merely contemplates a sale at some future date and does not, of itself, create an equitable estate in the vendee. Parks v. Classen Co., 156 Okla. 43, 9 P. 2d 432; Bradford v. Jones, 170 Okla. 636, 41 P. 2d 857. The rule relied on is stated in the latter case as follows:

"A mere contract to sell and convey real estate at a future time on condition that the purchaser perform certain acts or make certain payments does not, of itself, create an equitable title in the purchaser."

It may be that a mere contract or provision in a contract agreeing to sell real estate at some future date is insufficient of itself to create a present equitable estate in the vendee. But, as in all contracts, the intention of the parties, especially the vendor, governs. If the contract as a whole shows that the intention was to convey a present equitable estate, the courts will give effect to such intention regardless of the separate meaning of particular or isolated words. Greater regard will be given to the intention as shown by the entire agreement than to the separate meaning of particular words or expressions. 66 C. J. 650, § 207. In case of ambiguity and doubt the court in determining the intention may resort not only to the contract but to the subject matter, the situation of the parties, the circumstances surrounding the transaction, and to the subsequent acts of the parties showing their own construction of the agreement. Id.; Lowery v. Westheimer, 58 Okla. 560, 160 P. 496.

The present contract provided that the vendor has this day bargained to sell and the vendee agreed to purchase the land "upon the terms hereinafter set forth." Among those terms was the immediate surrender of possession to the vendee. This is reflected in the provision that the vendee "undertakes and agrees to manage, operate and lease . . . said farms . . . to the best advantage . . . and to keep the fences and buildings thereon in good repair. . . ." That provision, coupled with the so-called granting clause, above, showed a clear intention to convey the land and to turn over immediate possession and the benefits to accrue therefrom to the vendee. The only uncertainty appearing upon the face of the contract was whether the vendee actually took and retained possession under the contract. If Lacey and Steele did take possession and retain it, the contract passed the beneficial or equitable estate to them. In such case rightful possession carries with it the beneficial interest, and nothing remains to be done except to pay the purchase money when due and to execute the deed. In such case there is

a transfer of the equitable estate, and the rule governing the situation is the same as that applied in the case where the contract purports to be a present grant or sale, with or without possession, for a consideration to be paid in part, and the deed to be executed and delivered at a future date. That rule is stated in Dunn v. Yakish, 10 Okla. 388, 61 P. 926, as follows:

"Equity treats things agreed to be done as actually performed, and when real estate is sold under a valid contract, the purchase money to be paid in part, and the deed executed at a future day, the equitable title passes at once to the vendee, and equity treats the vendor as a trustee for the purchaser of the estate sold, and the purchaser as a trustee of the purchase money for the vendor."

We say that the provision giving the vendee immediate possession, coupled with his actual possession pursuant thereto, in a contract to convey in the future, is equivalent to and performs the same function as do words indicating a present sale. The result is the same; a present equitable estate thereby becomes vested in the vendee.

The undisputed evidence shows that Lacey and Steele took immediate possession of the lands pursuant to the express provision of the contract, and remained in possession up to the time the action was instituted. The trial court therefore erred in holding that the defendant still retained title within the meaning of the statute.

In Parks v. Classen Co., and Bradford v. Jones, supra, it was merely held that a contract to convey in the future did not, of itself, convey an equitable estate. In any contract of sale or any contract to sell, the vendee cannot sucessfully demand a deed until he performs his part of the contract. But a present right to demand a deed of conveyance is not always a necessary element to an equitable title or beneficial interest in the premises. The rule in Dunn v. Yakish, supra, makes that clear.

The holding in Bradford v. Jones,

supra, and certain other of our decisions, that an executory contract for the sale of real estate was not, of itself, sufficient to pass equitable title is not in accord with the overwhelming weight of authority. The general rule is that upon execution of an executory contract for the purchase and sale of land, made for a valuable consideration, the vendee acquires an equitable estate in the land subject simply to a lien in favor of the vendor as security for payment of the purchase price. 1 Pomeroy Eq. Jur. (4th Ed.) §§ 368, 372. In section 368, dealing with executory contracts for the sale of land from the standpoint of equity, the author says:

"While the legal relations between the two contracting parties are wholly personal, — things in action, — equity views all these relations from a very different standpoint. In some respects, and for some purposes, the contract is executory in equity as well as at law; but so far as the interest or estate in the land of the two parties is concerned, it is regarded as executed, and as operating to transfer the estate from the vendor and to vest it in the vendee. . . . The vendee is looked upon and treated as the owner of the land; an equitable estate has vested in him commensurate with that provided for by the contract, whether in fee, for life, or for years; although the vendor remains owner of the legal estate, he holds it as a trustee for the vendee, to whom all the beneficial interest has passed, having a lien on the land, even if in possession of the vendee, as security for any unpaid portion of the purchase-money."

And section 372 reads as follows:

"Another immediate and evident consequence of the principle is the equitable property created by mere agreements to purchase and sell lands. If the contract is made upon an actual valuable consideration, and complies in other respects with the requisites prescribed by equity, then, as soon as it is executed and delivered, the vendee acquires an equitable estate in the lands subject simply to a lien in favor of the seller as security for payment of the price, while the vendor becomes equitable owner of the purchase-money."

See, also, note to section 368, supra, wherein the author says:

"It is a great mistake, opposed to the fundamental notions of equity, to suppose that the equity maxim does not operate, and the vendee does not become equitable owner until and as far as he has actually paid the stipulated price. This erroneous view has sometimes been suggested, and sometimes even held, in a few American decisions; but it shows a misconception of the whole equitable theory."

With due respect to the general rule obtaining in such cases and our former decisions on the subject, we apply to the particular facts and circumstances of this case the rule that a valid executory contract for the sale and purchase of real estate, coupled with possession of the premises in the vendee pursuant to the provisions thereof, passes to the vendee the equitable title to such real estate.

In the trial court the statute was attacked as being unconstitutional, but that issue is not pressed here, and has apparently been abandoned. We therefore make no expression on that question.

The judgment of the trial court is reversed and the cause remanded, with directions to enter judgment for defendants.

WELCH, C.J., CORN, V.C.J., and OSBORN, HURST, DAVISON, and ARNOLD, JJ., concur. RILEY and BAYLESS, JJ., absent.