WENDELL D. BELDEN AND SANDRA J. BELDEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Belden v. Commissioner
Docket No. 4747-93
United States Tax Court
T.C. Memo 1995-360; 1995 Tax Ct. Memo LEXIS 362; 70 T.C.M. (CCH) 274; August 2, 1995, Filed *362 Decision will be entered for petitioners. For petitioners: Timothy J. Sullivan. For respondent: Bruce K. Meneely. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent determined income tax deficiencies for petitioners' 1989 and 1990 tax years in the amounts of $ 12,488 and $ 5,040, respectively. Respondent also determined penalties under section 6662 [1] for 1989 and 1990 in the amounts of $ 2,498 and $ 1,008, respectively. The issues for our consideration are: (1) Whether petitioners are entitled to claim interest deductions under section 163 for 1989 and 1990; and (2) whether petitioners are liable for the penalty under section 6662 [2] for negligence or disregard of the rules or regulations for either 1989 or 1990. *363 FINDINGS OF FACT Petitioners Wendell D. and Sandra J. Belden are husband and wife, and they resided in Tulsa, Oklahoma, at the time their petition was filed in this proceeding. Petitioner Wendell D. Belden was a registered investment adviser during 1988. At all relevant times, petitioners reported their income and deductions on the cash method of accounting. On December 19, 1988, petitioners entered into a contract for the purchase of a residence (Crown Pointe property) and took possession within 2 weeks. On January 16, 1989, petitioners and the seller, Ahrend Homes, Inc. (Ahrend), entered into an occupancy agreement as a supplement to the contract for purchase, providing petitioners with immediate rights of occupancy. The purchase contract committed petitioners to paying $ 500,000, $ 20,000 of which was paid to Ahrend as earnest money. Petitioners were to obtain $ 400,000 of permanent financing. The $ 80,000 balance was to be supplied by petitioners in the form of a promissory note to Ahrend at closing. The purchase contract was subject to the condition subsequent that Ahrend obtain suitable financing for the $ 400,000 under terms acceptable to petitioners. In that regard, petitioners *364 were required to be reasonable in their acceptance or rejection of the final financing secured by Ahrend. There was no stated time limit within which financing could be obtained. The parties had not contemplated the amount of time it might take to secure permanent financing. Until arranging for permanent financing, the occupancy agreement required petitioners to pay Ahrend $ 3,500 monthly, commencing February 1, 1989. The $ 3,500 was in the same amount as the interest Ahrend was paying on its outstanding construction loan on the Crown Pointe property. It was the parties' understanding that petitioners would bear the $ 3,500 construction mortgage interest as long as they possessed the house and until permanent financing could be obtained. The $ 3,500 payment was designated "interest only" in the occupancy agreement and terminated upon completion of the sale. During 1989 and 1990, petitioners' $ 3,500 monthly payments totaled $ 42,000 and $ 18,000, respectively. All utilities were to be placed in petitioners' names, and petitioners agreed to obtain liability and contents insurance. Following a 2-month transition period, petitioners were responsible for the costs of repairs to plumbing, *365 heating, cooling, electrical equipment, and appliances. Ahrend was given the option of obtaining insurance on its interest in the residence, and was required to pay the local real estate taxes on the Crown Point property. Petitioners and Ahrend complied with all terms of the occupancy agreement. The Crown Pointe property had been vacant for several years and had fallen into poor repair prior to petitioners' agreeing to purchase it. Petitioners paid in excess of $ 13,000 to repair, maintain, or improve the property during 1989. The occupancy agreement provided that petitioners would be reimbursed for improvements that they made to the property, in the event that petitioners were not the ultimate legal title holders of the Crown Pointe property. If the sale was ultimately unsuccessful, petitioners were liable for any damage (which exceeded normal wear and tear) that they caused to the property. Petitioners and Ahrend did not close on the purchase contract, title was not transferred from Ahrend to petitioners, and financing was not obtained. These events did not occur because of the bank's foreclosing on Ahrend's construction mortgage on the Crown Pointe property. Ultimately, petitioners *366 purchased the property from the foreclosing bank, receiving title on February 1, 1991. Petitioners were named as defendants in the foreclosure action because of their equitable or possessory interest in the Crown Pointe property. After commencement of the foreclosure proceeding, and prior to petitioners' purchase of the Crown Pointe property from the bank, petitioners paid the $ 3,500 monthly payments directly to the bank. On February 1, 1991, petitioners obtained a $ 297,000 mortgage on the Crown Pointe property with a bank that had not previously been involved with the property. OPINION On their 1989 and 1990 Federal income tax returns, petitioners claimed the $ 3,500 monthly payments made in connection with the Crown Pointe property as deductible interest payments. These payments were made pending the closing of the residential real estate transaction in which the seller was to obtain permanent financing for the buyer, while the buyer had possession and the benefits of full use of the property as a personal residence. Respondent argues that the payments made by petitioners to Ahrend and the bank were rent and not interest. Petitioners bear the burden of showing that they were *367 entitled to the deductions in question. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). Generally, section 163 provides for the allowance of a deduction for all interest paid on indebtedness. Personal interest, however, is generally not deductible. Sec. 163(h). "Qualified residence interest", however, is excepted from the definition of "personal interest" within section 163. Sec. 163(h)(2)(D). "Qualified residence interest" includes interest paid during the taxable year on acquisition indebtedness with respect to a qualified residence. Sec. 163(h)(3)(A)(i). A "qualified residence" includes a taxpayer's principal residence within the meaning of section 1034. Sec. 163(h)(4)(A). In order to constitute "acquisition indebtedness", the debt must be "incurred in acquiring, constructing, or substantially improving any qualified residence * * * and [it must be] secured by such residence." Sec. 163(h)(3)(B)(i). Generally, to be deductible interest under section 163(h)(3), a payment must be made with respect to indebtedness that is secured by the taxpayer's qualified residence. Secs. 163(a), 163(h)(3)(B); sec. 1.163-10T(o)(1)(i), Temp. Income *368 Tax Regs., 52 Fed. Reg. 48410 (Dec. 22, 1987). Petitioners were contractually bound to purchase and Ahrend was bound to sell the subject realty. The contract contained a condition subsequent by requiring that Ahrend find acceptable financing for petitioners, but petitioners were required to be reasonable in approving the financing located by Ahrend. Respondent characterizes the contract as being conditional, implying that petitioners controlled the outcome (they could avoid their obligation to take title and pay the remaining $ 480,000) by refusing to accept any financing obtained by Ahrend. Petitioners counter that they were bound to purchase, had possession of, and were the equitable owners of the realty. Respondent, on the other hand, argues that ownership of the realty is not the deciding factor, and thus, petitioners did not incur any indebtedness in 1989 or 1990 within the meaning of section 163(h)(3). Respondent contends that petitioners did not incur indebtedness until 1991, when title was received from the foreclosing bank and petitioners obtained a $ 297,000 mortgage. In that regard, respondent argues that Ahrend's indebtedness cannot be relied *369 on by petitioners to satisfy this requirement. Petitioners counter that they were equitable owners of the property, and that their payments to Ahrend were for interest on the construction loan as set forth in the agreements between the parties. For petitioners to be entitled to the claimed interest deductions for 1989 and 1990, section 163(h)(3) requires that they show: (1) The interest was paid on "acquisition indebtedness" (i.e., debt "incurred in acquiring, constructing, or substantially improving any qualified residence"); [3] and (2) the indebtedness was secured by such qualified residence. Petitioners made the $ 3,500 payments either to Ahrend (which in turn made them to the bank) or directly to the bank after the time of the foreclosure. The occupancy *370 agreement between petitioners and Ahrend designated those payments as interest on Ahrend's construction loan, which was incurred to build the qualified residence (Crown Pointe property). The construction loan was secured by a mortgage on the Crown Pointe property, and that mortgage was foreclosed by the bank from which petitioners ultimately obtained legal title. We must now decide whether petitioners are entitled to deduct interest on debt that they are not personally obligated to repay. Section 1.163-1(b), Income Tax Regs., provides that "Interest paid by the taxpayer on a mortgage upon real estate of which he is the legal or equitable owner, even though the taxpayer is not directly liable upon the bond or note secured by such mortgage, may be deducted as interest on his indebtedness." See also Baird v. Commissioner, 68 T.C. 115, 123 (1977). Respondent argues that the contractual relationship between petitioners and Ahrend was conditional such that petitioners could not become the legal or equitable owners until the property was deeded to them. In a Federal tax proceeding, the question of when a sale is completed is to be resolved by the facts and *371 circumstances in each case, and no one factor is controlling. Id. at 124; Clodfelter v. Commissioner, 426 F.2d 1391 (9th Cir. 1970), affg. 48 T.C. 694 (1967). Concerning real property, a sale is completed at the earlier of transfer of legal title or the practical assumption of the benefits and burdens of ownership. Baird v. Commissioner, supra at 124; Dettmers v. Commissioner, 430 F.2d 1019 (6th Cir. 1970), affg. Estate of Johnston v. Commissioner, 51 T.C. 290 (1968). Our factual inquiry must focus upon the shift of the benefits and burdens of ownership. Baird v. Commissioner, supra at 124; Merrill v. Commissioner; 40 T.C. 66 (1963), affd. per curiam 336 F.2d 771 (9th Cir. 1964). Petitioners did not acquire legal title until 1991. Accordingly, we must consider whether the benefits and burdens of ownership transferred to them prior to 1991. At the time petitioners entered into the contract with Ahrend, the *372 only incomplete contractual requirements were: (1) Obtaining permanent financing, (2) execution and transfer of an $ 80,000 note from petitioners to Ahrend, and (3) transfer of legal title from Ahrend to petitioners. Petitioners had the complete right to possess and resided in the Crown Pointe property, beginning 2 weeks after the agreement was executed. While Ahrend had the option to obtain insurance on the residence and was required to pay the local real estate taxes, petitioners were required to maintain liability and contents insurance. All utilities were carried in petitioners' names, and they bore the costs of any improvements, unless the property was ultimately sold to a different buyer. Following a 2-month transition period, petitioners were responsible for the costs of repairing the plumbing, heating, cooling, electrical equipment, and appliances. Under Oklahoma law, if the parties enter into a contract for the sale of realty, factual inquiry must focus upon the shift of the benefits and burdens. A contract for sale, coupled with the buyer's taking possession, constitutes a transfer of the benefits of ownership to the buyer and may constitute a transfer of an equitable interest. *373 State Life Ins. Co. v. State, 135 P.2d 965, 967-968 (Okla. 1942); Resolution Trust Corp. v. Sudderth, 854 P.2d 375, 377 (Okla. Ct. App. 1993); King v. Lunsford, 852 P.2d 821, 823 (Okla. Ct. App. 1993). In State Life Ins. Co. v. State, supra, the Oklahoma Supreme Court, in finding the transfer of equitable interest when legal title had not yet passed between parties who contracted for the sale of realty and transferred possession, stated that: It may be that a mere contract or provision in a contract agreeing to sell real estate at some future date is insufficient of itself to create a present equitable estate in the vendee. But, as in all contracts, the intention of the parties, especially the vendor, governs. If the contract as a whole shows that the intention was to convey a present equitable estate the courts will give effect to such intention regardless of the separate meaning of particular or isolated words. * * * The present contract provided that the vendor * * * bargained to sell and the vendee agreed to purchase * * *. Among those terms was the *374 immediate surrender of possession to the vendee. * * * In such case rightful possession carries with it the beneficial interest, and nothing remains to be done except to pay the purchase money when due and to execute the deed. In such case there is a transfer of the equitable estate * * *
Id. at 967. Viewing this record in its entirety, we conclude that the benefits and burdens of ownership shifted to petitioners when they took possession of the residence. Baird v. Commissioner, 68 T.C. at 124; State Life Ins. Co. v. State, supra.
Petitioners rely heavily on a factually similar opinion of this Court. Amundson v. Commissioner, T.C. Memo. 1990-337. In that case a brother was allowed to deduct interest payments on his sister's mortgage because of an informal agreement under which the brother would acquire a 50-percent interest in the subject residence if he made mortgage payments. Having concluded that the brother/taxpayer "had a 50-percent equitable interestin the property and, in effect, [that he] had assumed liability for the mortgage", this Court *375 held that the brother/taxpayer was entitled to deduct the interest payments. In the instant case, respondent argues that the taxpayer had no legal obligation to the lender that would permit an interest expense deduction. But the cases cited by respondent in that regard are similar to those which, in Amundson v. Commissioner, supra, were regarded as distinguishable because those cases involved taxpayers who had guaranteed corporate loans secured by collateralizing their residences. Because of the finding in Amundson that the brother/taxpayer had an ownership interest in the property, the cited cases were there distinguished. This case also presents a unique set of facts under which we conclude that petitioners had a possessory and an equitable interest in their residence. Through their two contracts with Ahrend, petitioners effectively assumed the obligation to pay the interest on the construction mortgage until permanent financing could be obtained. The $ 3,500 payments were neither rent nor payments to reduce the purchase price. Moreover, the price agreed upon between petitioners and Ahrend remained at $ 500,000, irrespective of the lapse of *376 time or the total number of $ 3,500 monthly payments made. Petitioners agreed to carry the existing mortgage interest during the interim period in which Ahrend searched for financing. They were the equitable owners of the property during that period and are entitled to deduct the payments as interest. Under the unique circumstances of this case, petitioners are entitled to qualified residence interest deductions in the amounts of $ 42,000 and $ 18,000 for 1989 and 1990, respectively. Having decided that petitioners are entitled to the deductions in controversy, there are no deficiencies in their income tax, and there is no need to reach the issue of whether petitioners are liable for a penalty for negligence in either year. To reflect the foregoing, Decision will be entered for petitioners.
Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years under consideration. Rule references are to this Court's Rules of Practice and Procedure.↩
2. Respondent also alternatively determined that petitioners were liable for the accuracy-related penalty under sec. 6662 for substantial understatement of income tax, but respondent has conceded that portion of the determination.↩
3. A qualified residence is the taxpayer's principal residence or another residence of the taxpayer that meets the conditions of sec. 163(h)(4)(A). Petitioners here resided in the Crown Pointe property as their sole residence during the years under consideration.↩